### ST. CLAIR v. RUSSELL & PUGH LUMBER CO.
### No. 1526.

District Court, D. Idaho, N. D.
July 3, 1943.

48

Paul C. Keeton and William D. Keeton, both of St. Maries, Idaho, for plaintiff.

Ezra R. Whitla and Emory T. Knudson, both of Coeur d'Alene, Idaho, for defendant.

CHASE A. CLARK, District Judge.

The complaint in this case was filed on the 14th of December, 1942, and the cause of action is based on a violation of Section 207, 29 U.S.C.A. of the Fair Labor Standards Act of 1938.

The complaint alleges that the defendant Russell and Pugh Lumber Company was and still is a corporation organized under the laws of the State of Idaho, and that they are employers of labor, engaged in the production of goods for commerce in that they are operating a sawmill at Springston, Idaho, at which they are engaged in cutting, manufacturing, securing, holding and delivering from the forest of Idaho, saw-logs which were processed and manufactured by them into lumber plank, ties and lumber products which are sold and shipped by them in interstate commerce.

It is further alleged that the plaintiff was employed by the defendant on the 16th day of June, 1940, as a night watchman, boiler tender and fireman producing the power for the operation of and the running of the saw-mill above referred to, in the manufacturing of logs as aforesaid.

The plaintiff further alleges that the plaintiff worked seven days per week and worked each day 7½ hours in the work above stated; that the plaintiff began work on the 16th day of June, 1940, and continued in the same line of work up to and in-

cluding the 12th of August, 1942, working a total of 52½ hours a week and sets forth in the complaint a detailed statement of the total hours work each week, the amount claimed as overtime and the total amount of pay, and that his total overtime employed was 1360½ hours. He sets forth the rate of pay he received for different periods during the said employment. He claims that the scale of pay ranged from $3 per shift up to $4.07½ per day or shift, and that the shift during all of said time as therein alleged was a work-day of 7½ hours. Plaintiff asks for $628.48 with interest at 6 per cent which includes what he alleges as regular pay and one and a half times his pay for overtime and liquidated damages as provided in the law and also, in addition thereto, $250 as attorneys' fees.

Defendant admits its corporate capacity; admits that it is an employer of labor and that it is engaged in commerce and in answer to the claims of the plaintiff, alleges that the employees which include this plaintiff were represented by the Industrial Employers Union from the commencement of his employment until April 18, 1941, and thereafter with the International Woodworkers of America affiliated with the C. I. O. which was the bargaining agent representing all labor within the plant; that plaintiff accepted employment on the basis of that arrangement; that the plaintiff was to be paid by the shift figured on a certain rate per hour plus time and a half for overtime; that plaintiff was the night watchman; that the agreement was changed from time to time as to rate only, and was in force and effect at the time plaintiff started working and continued in force and effect during all of the time that plaintiff worked and that said agreements were negotiated from time to time, and in each and all of them the amount per shift to be paid night watchmen was figured on the basis of a certain amount per hour plus time and a half for overtime; that plaintiff was not employed as a boiler tender or a fireman but that such duties were only casual in that as night watchman he kept the fires burning when the plant was closed; that plaintiff knew of the arrangement and that such arrangement was approved by the representative of the National Labor Relations Board, and the defendant alleges that all work was performed by the plaintiff under arrangement made with him, and that he was paid by the shift under such arrangement, and that his pay was figured on an hourly basis plus time and a half for overtime, all of which was known to the plaintiff and made to him in accordance with Union agreement and also in accordance with agreement made between plaintiff and the defendant; that the plaintiff worked no other time than the shift for which he was employed and paid.

The foregoing statement is taken from the complaint and answer of the parties to this action and is, in the main, borne out by the evidence, in fact there is very little conflict in the evidence in this case. The only dispute being whether the extra hours work, over the forty hours per week, were overtime work that was not paid for on the basis of time and a half for overtime. There was a little dispute as to the nature of plaintiff's employment but the uncontradicted testimony shows that plaintiff was hired as a night watchman with the duty going with the position, of not letting the fire die out in the boilers, and that the work performed in that regard was the regular work laid out for the watchman working in his position. Otherwise, there is only one question to decide in this case, and that is whether the employment was such that the plaintiff was entitled to the overtime as prayed for on the basis of the regular rate of pay being paid for a 7½ hour shift per day, on a forty hour per week schedule.

The evidence plainly shows that the plaintiff was employed, on the 16th day of June, 1940, by the defendant as a night watchman, under an oral agreement between them; that the plaintiff should work on a monthly basis; that he was to work a 7½ hour shift each day for every day in the month; that it was agreed that his work should be steady, when the mill shut down his work should go on and he was not to be laid off on account of such shutdowns; that there was a full understanding and agreement between the plaintiff and defendant as to the number of hours to be worked each day and the number of days each month, and that the amount agreed upon was in excess of the minimum provided by the wage and hour law of the Fair Labor Standards Act.

It is also undisputed in the evidence that at the time of the employment of the plaintiff by the defendant on the 16th day of June, 1940, he was a member of the Industrial Employer Union and thereafter throughout his employment with the defendant was a member and in good standing

50

of the International Woodworkers of America, affiliated with the C. I. O., and all during said period of employment these organizations were the bargaining agent representing all labor within the plant; that the plaintiff was fully aware of the arrangement made with both of said organizations and that he accepted the employment on the basis of such arrangement; that said organizations negotiated from time to time in regard to these agreements, and that these agreements as changed from time to time provided for the amount to be paid all employees working for the defendant corporation and the amount to be paid per shift to the night watchmen was figured on a 7½ hour per day shift on a steady monthly basis. The 7½ hour shift to be worked each day, and that the agreement so made with the labor organizations through their bargaining agreement was approved by the representative of the National Labor Relations Board, and that the defendant paid the plaintiff the amounts as set forth in the complaint, in an amount in excess of the minimum provided by the wage and hour law.

Taking the statement of fact to be as set forth in the pleadings with the minor exceptions noted, leaves just two questions:

1. Can the defendant corporation make an agreement such as made in this case with the plaintiff to employ him on a monthly basis by which it is agreed that he shall work 7½ hour shifts each day at a rate of pay which if figured on time and a half for overtime would be in excess of the minimum amount provided by the wage and hour law?

2. When the mill is unionized, as in this case, and the plaintiff, as in this case, was a member of the Union, and the Union, in accordance with the Statutes, bargains for all labor within the plant and enters into a working agreement with the employer as was done in this case and providing that such bargaining agreement so agreed upon provides for a rate of pay in excess of the minimum provided by the Fair Labor Standards Act, is such agreement controlling on the employee?

If either of the answers to these two propositions is in the affirmative then the plaintiff would fail in this case and recovery would be denied.

■ So, first looking at the contract that was made between the plaintiff and defendant in this case, without taking into consideration the bargaining agreement, we can say first, in answer to it, that there can be no question that the wage and hour law prohibits a rate of pay for overtime less than one and a half times the regular rate at which the employee is employed. However, can this be construed in any way to prevent the employee from entering into a contract to work a longer time than forty hours a week on a monthly basis, where the contract is not for less than the minimum wage? That is what the employee has done in this case. He entered into a contract knowing just what his hours of work would be per week on a monthly basis. If such a contract does not conform with the wage and hour law, then it would appear impossible for any arrangement to be made between the employer and employee to work on a monthly basis which would amount in all to a work-week of more than forty hours.

■ It has been said as a rule of law: "You do not hold the employee down to any figure, you let him go and get all he can, but he certainly has a right and certainly is free to bargain with his employer as to what he shall get, provided he does not go lower than the law." And in some cases we find this statement: "So while Congress struck down the right of an employee to contract for less than the minimum wage, it did not strike down the right of the employee and the employer to contract with reference to the wages which are in excess of minimum wages, and that is the way these employees have done." A. H. Belo Corporation v. Street, Regional Director of Wage and Hour Law, D.C., 36 F.Supp. 907, 908, 909.

■ Now, if this Court follows this rule of law as given in this case, which was later affirmed by the Circuit Court of Appeals, Fleming v. A. H. Belo Corporation, 5 Cir., 121 F.2d 207, and later affirmed by the Supreme Court of the United States, Walling v. A. H. Belo Corporation, 316 U. S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716, we have an agreement here that is a great deal stronger than the agreement in that case, because that agreement was made after the wage and hour law went into effect, continuing the same rate of pay that was established prior to the enactment of the Fair Labor Standards Act, and in this agreement the contract was entered into after the enactment of the law, with each party being advised of the terms and conditions of it. So that if this question is

answered in the negative the Court would have to take away the rights of the members to enter into such a contract. Here—in this case—is an employee who benefits by such a contract because he is given steady employment. He knows what his pay check is going to be at the end of the month, when the mill is shut down through breakdowns, or through shortage of material, he is assured in the contract of employment that he will not be laid off. It is clearly shown by the evidence in this case that such a contract was made. That the employee was paid at a regular rate in excess of the minimum fixed by the statute, and for overtime at a rate not less than one and a half times that regular rate. It cannot be said, in view of the authorities above quoted, that what the employer and the employee did in this case was a violation of the intention of the law. There can be no question that it was intended by the parties in making this agreement that the wage stipulated was to cover overtime work. This was a contract which provided for a regular salary although it was agreed that the work hours should be 7½ hours per day, it was for full time each month, for the parties had knowledge of the law. The amount agreed upon was more than sufficient to cover overtime without violating the minimum wage conditions of the Fair Labor Standards Act, and the agreement did not violate the provisions of the Act. There was a complete understanding in the contract of employment. Such a contract should be upheld; to do otherwise would prohibit parties from contracting with reference to labor, even where the compensation to be paid is not less than the minimum provided by the act. With the law in mind the contract was fixed at an amount in excess of the minimum wage. "Where employer in alleged anticipation of * * * enactment [of this chapter] * * * increased salary of clerk who on effective date of [chapter] was entitled to a minimum wage of $11 per week, from $12 to $15 for a 50-hour week, employer did not, after chapter was enacted, become liable to clerk for 6 hours per week overtime based on a weekly wage rate of $15." Gurtov v. Volk, 170 Misc. 322, 11 N.Y.S.2d 604, 605. So my answer to this is in the affirmative, to say that the employee and employer had a right to make such a contract and that such contract so made was not in violation of the provisions of the wage and hour law.

As to the second proposition we have the employment contract made with the Union. Collective bargaining is a policy provided for in the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., whereby employers and employees, by the Union for the employees, and the employer acting for himself, may agree in writing concerning wages and hours.

The National Labor Relations Act was set up for the protection of the workingman in his right to self organization and to bargaining collectively through representatives of his own choosing and to bargain collectively for mutual aid and protection.

In this case a labor Union has been designated as bargaining agent for the employees and a bargaining agreement has been approved through the National Labor Relation Board. The plaintiff in this case joined both of the organizations and was a member during all of the period of his employment and the defendant in this case recognized, by written agreement, the Union as the sole collective bargaining agency subject only to federal and state laws governing collective bargaining. The purpose of the contract as set forth in the written agreement was to establish practical rules of collective bargaining between the two groups under which high standards of employment such as hours of work, working conditions, minimum and going wage scales could be established through joint conferences on a basis consistent with the cost of American Standards of living. The Union maintained a local at the Company's operation, the membership of which consisted only of employees of which the plaintiff was one, and the local established a committee which held, under such agreement, regular meetings at least once a month and special meeting on the call of the chairman of the conference committee, and it was their duty to work with the employer and protect the employees as to going wages, hours, overtime, working conditions, safety, living and recreational conditions, unwarranted discharge of members, tool charges and breakage; of all local conditions surrounding the employment affecting the employee and the employer, and provided that all matters of local concern and of differences and grievances of the employee, collectively or individually and to adjust promptly to the satisfaction of all

52

parties concerned, such matters. It provided that any member of the Union having a grievance should state his case to the conference committee representative of the unit in which he is a member and the committeeman would discuss the matter then with the other members of the conference committee and attempt to bring about settlement through the foreman in charge of that particular unit, and then, if no settlement was reached, the question should be referred to the Superintendent and if still no settlement or satisfactory agreement was arranged then the committee could go to the management, with the right in the committee to call in a representative from general headquarters of the Industrial Employees Union, and the same kind of agreement was made with the International Woodworkers of America, affiliated with the C. I. O. It was compulsory under this agreement to discharge any employee who failed to keep in good standing through nonpayment of dues.

If this agreement is binding on the plaintiff in this case, then, again, this proposition must be answered in the affirmative and recovery denied, because the evidence shows that the plaintiff joined the Union and accepted the employment on the basis of said agreement; that he was paid for the time he worked in accordance with said agreement, and it is admitted by him that no complaint was ever made to the conference committee representative, or in fact, to anyone. He continued to work under such agreement from the 16th day of June, 1940, up to and including the 12th day of August, 1942, a period of approximately two years and two months, without having ever questioned the rate of pay he was receiving, through regularly constituted authorities under this agreement, or in any other way.

"The purpose of the National Labor Relations Act is to protect the workingman in his right to self-organization, to form, join or assist labor organizations, to bargain collectively through representatives of his own choosing and to engage in concerted activities for purpose of collective bargaining or other mutual aid or protection. National Labor Relations Act § 7, 29 U.S.C.A. § 157.

"A labor union after it has been designated as bargaining agent for employees becomes the 'agent' and 'attorney' for the employees in the appropriate unit. National Labor Relations Act § 9(a), 29 U.S.C.A. § 159(a)."

North Electric Mfg. Co. v. National Labor Relations Board, 6 Cir., 123 F.2d 887.

"The National Labor Relations Act both grants rights and imposes duties and it confers by implication every power essential to the exercise of such rights or the performance of such duties. National Labor Relations Act § 1 et seq., 29 U.S.C.A. § 151 et seq.

"The intent of the National Labor Relations Act was to permit an employee to surrender to a collective agent his individual right to bargain with an employer, after which he no longer possesses such right during the life of the contract, and the act requires the employer to deal exclusively with the agent of his employees if one has been selected as provided. National Labor Relations Act, § 1 et seq., 29 U.S.C.A. § 151 et seq.

"The relation of 'employer and employee' arises out of a meeting of minds, with an offer on the part of one and an acceptance on the part of the other, and no person can be caused, against his will, to enter into an employment contract, nor can any employer be compelled to employ another.

"The growth of collective bargaining as a method of avoiding labor controversies leading to strikes has become a fixed policy of the law, and under National Labor Relations Act the agreement between employer and employees' representatives must be reduced to a signed contract which serves both as a recognition of the Union with which the agreement is reached and as a permanent memorial. National Labor Relations Act, § 1 et seq., 29 U.S.C.A. § 151 et seq.

\* \* \* \* \*

"Under National Labor Relations Act, an employer is not compelled, in all instances, to enter into a contract with the statutory representative of his employees, but he is required to agree in writing with such agent concerning wages, hours and the established usages or customs prevailing in the conduct of his business in regard to such matters. National Labor Relations Act, §§ 1 et seq., and 8. 29 U.S.C.A. §§ 151 et seq., and 158."

National Labor Relations Board v. Knoxville Pub Co., 6 Cir., 124 F.2d 875, 877.

■ The National Labor Relations Act was passed by Congress to provide reasonable measures to prevent disruption of interstate and foreign commerce. It has been held constitutional and one of its main objects is to prevent unfair labor practices. It prevents strikes. It protects members of the Union in their jobs. It denies the right to the employer to discharge workers at will. It entitled the employees to form labor organizations and bargain collectively through representatives of their own choosing and gives the National Labor Relations Board overall authority, subject to appeal to the Courts, of seeing that collective bargaining agreements are honestly carried out. It furnishes a means for labor to deal on equal footing with its employers. It places the duty on the National Labor Relations Board to proceed against employers charged with unfair labor practices. The law is to be administered so that justice will prevail; so that peace will be maintained in industrial life, and care should be taken to see that agreements made under the provisions of this chapter are carried out. The law should be construed as a whole. It is not only the purpose of the law to protect Interstate Commerce from interruption but it is a fundamental policy of the law to safeguard the rights of self organization and collective bargaining, and this by promotion of industrial peace and to remove obstructions to the free flow of commerce and to accomplish this purpose it was desirable to, and was enacted into law, that agreements should be made so that peaceful settlements of disputes between employers and employees could be had. It was intended by Section 7 of the Act, 29 U.S.C.A. § 157, to give the employee the right to surrender his individual right to the collective agent and bargain for him with the employer. After he has so surrendered it, there is nothing in the law that gives him the right to retain it individually, and during the life of the contract the employer is required to deal exclusively with the agent of his employees, if one has been selected as provided by the Act. In the instant case if a person wanted to work for the defendant company, it was necessary to join the Union and be subject to its rules and regulations. It was not necessary that he accept employment, that was a matter of his own choosing. His rights are fully protected by the agreement. There is nothing in the evidence in this case to show that the defendant has not always acted in good faith in dealing with the Union. In fact, officers of the Union testified on behalf of the defendant and as to the agreements and as to the plaintiff joining the Union and acquiescing to the agreement made with the defendant company. The plaintiff for over two years accepted the benefits of this agreement, he enjoyed the fruits, that is, the benefits derived from it. In fact, he makes no complaint until he leaves the employment of the defendant company. Under that agreement he has always received more than the minimum wages provided under the Fair Labor Standards Act. For over two years he worked under this contract with apparent satisfaction both to the employer and to himself.

Collective bargaining contracts have been attacked in numerous cases by the employer but the contracts have uniformly been upheld. Should the contract be set aside in this case? If the plaintiff in this case was to recover, the Court must upset the arrangement which has proved mutually satisfactory between the defendant and its employees. The Supreme Court in the case heretofore cited, Walling v. A. H. Belo Corporation, 316 U.S. 624, 62 S.Ct. 1223, 1229, 86 L.Ed. 1716, says: "Where the question is as close as this one, it is well to follow the Congressional lead and to afford the fullest possible scope to agreements among the individuals who are actually affected. This policy is based upon a common sense recognition of the special problems confronting employer and employee in businesses where the work hours fluctuate from week to week and from day to day."

■ It appears to me to be common sense that when the Union who is permitted, under the law, to the collective bargaining right, representing all of the employees, makes an agreement with the employer, the agreement is presumed to be one for the employees benefit and should not lightly be cast aside, but should be treated as any other contract and should be construed so as to accomplish its purpose.

■ I think that the question should be answered in the affirmative and plaintiff held bound by the contract, and particularly the contract should prevail where it provides for payment of wages in excess of the minimum under the wage and hour law.

Counsel for defendant will prepare findings of fact, conclusions of law and judgment in accordance with the views expressed herein, serve and present to the Court.