## ALLEN v. ATLANTIC CO.

### No. 10817.

Circuit Court of Appeals, Fifth Circuit.

Nov. 16, 1944.

Cubbedge Snow, of Macon, Ga., and Young H. Fraser, of Atlanta, Ga., for appellant.

A. O. B. Sparks and Charles M. Cork, both of Macon, Ga., for appellee.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

Plaintiff, night operating engineer for many years at the defendant's Macon plant, brought this suit for overtime claimed to be due him under the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq. At the conclusion of all the evidence, the District Judge directed a verdict for the defendant on the ground that the act did not apply to plaintiff because within the meaning of Sec. 13(a)[1] of the Fair Labor Standards Act, he was during the time in question an "employee employed in a bona fide executive * * * capacity." This appeal tests the correctness of that instruction. Here both appellant and appellee accept the administrator's definition [2] of "employee employed in a bona fide executive * * * capacity", and the controversy is over whether it was correctly applied to the facts.

Appellant concedes that the proof as to plaintiff's activities brings him within subdivisions (B), (C), (D) and (E) of the definition. He insists, however, that it fails to bring him within subdivision (A), requiring that his primary duty be one of management, and subdivision (F), requiring that his hours of nonexempt work do not exceed twenty percent. Pointing out that the burden on an employer of proving that employees claiming overtime were executive employees exempt from the Fair Labor

[1] "The provisions of sections 6 and 7 shall not apply with respect to (1) any employee employed in a bona fide executive, administrative, professional, or local retailing capacity, or in the capacity of outside salesman (as such terms are defined and delimited by regulations of the Administrator)." U.S.C.A. Title 29, § 213.

[2] As originally promulgated, October 24, 1938, 29 C.F.R. 541.1, it reads:

"The term 'employee employed in a bona fide executive (and) administrative * * capacity' in section 13(a) (1) of the act shall mean any employee whose primary duty is the management of the establishment, or a customarily recognized department thereof, in which he is employed, and who customarily and regularly directs the work of other employees therein, and who has the authority to hire and fire other employees or whose suggestions and recommendations as to the hiring and firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight, and who customarily and regularly exercises discretionary powers, and who does no substantial amount of work of the same nature as that performed by nonexempt employees of the employer, and who is compensated for his services at not less than $30 [exclusive of board, lodging, or other facilities] for a workweek."

As amended October 24, 1940, it now reads:

"The term 'employee employed in a bona fide executive * * * capacity' in section 13(a) (1) of the act shall mean any employee—

"(A) Whose primary duty consists of the management of the establishment in which he is employed or of a customarily recognized department or subdivision thereof, and

"(B) Who customarily and regularly directs the work of other employees therein, and

"(C) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight, and

"(D) Who customarily and regularly exercises discretionary powers, and

"(E) Who is compensated for his services on a salary basis at not less than $30 per week (exclusive of board, lodging, or other facilities), and

"(F) Whose hours of work of the same nature as that performed by nonexempt employees do not exceed 20 percent of the number of hours worked in the workweek by the nonexempt employees under his direction; provided that this subsection (F) shall not apply in the case of an employee who is in sole charge of an independent establishment or a physically separated branch establishment."

Standards Act[3] is satisfied only by proof of compliance with each subdivision of the definition, he insists that the state of the evidence as to compliance with subdivisions (A) and (F) required a verdict for plaintiff or at least made an issue for the jury.

Appellee, denying this, insists that appellant's own testimony as to his duties and as to what he did in the course of performing them leaves in no doubt that a directed verdict for defendant was demanded.

As to compliance with subdivision (A) of the definition, it is sufficient to say, without burdening this opinion with a detailed statement of it, that the undisputed evidence, including that of plaintiff himself, brought plaintiff squarely within this subdivision. It left in no doubt that plaintiff was employed because of his special skill and ability as a refrigerating engineer, and that while he did have some manual tasks to perform, these tasks were simply incidents of his primary job or duty, that 'of management of operations. As to subdivision (F), plaintiff did on direct examination roughly estimate that he spent two or three hours a day opening, closing and checking the valves, about an hour and a half a day repairing the machinery, and about an hour a day in oiling it, a total of four or five hours a day, or from 33 to 40 percent of the 12 hours a day he worked. On cross-examination, however, he made it quite clear not only that this testimony was intended to be just a rough guess, but that it was wholly incorrect.[4] He also testified: Q. "Now you didn't regularly do any kind of work that the men under you did, did you? A. No, sir". Such manual work as he did, except for the extraordinary repairs which he was called upon to perform, was an incident to his job of supervision and was not work of a kind which would be normally performed by nonexempt employees. We are convinced that his testimony taken as a whole admits of only one conclusion, that his "hours of work of the same nature as that performed by non-exempt employees * * * under his direction" did not ex-

ceed 20 percent, that, indeed, they were greatly less than that. The record standing thus, a verdict for defendant was demanded. The judgment was right. It is affirmed.

McCORD, Circuit Judge (dissenting).

Harry Andersen was the chief engineer at Macon, Georgia, of the Atlantic Company, and H. H. Allen was titled operating engineer of the same ice plant. The evidence is without dispute that Allen went to work for this company the second time in January of 1938 at $30 per week, and worked for that salary until he left the employment of the company in May, 1941. He worked from 7 in the evening until 7 in the morning, 12 hours, seven days each week, and was never given a raise. Andersen, the chief engineer, gave Allen orders, and Allen worked at night with negro laborers and performed much manual labor; he fired a heating boiler during the winter months to heat the building; oiled around the machinery; when ice was pulled and help was short he went in and pulled ice with the laborers; he aided them in icing cars when labor was short; he spent 15 minutes writing up what was done at night in the office early every morning; this was the only time he spent there, and he did not have a key to the desk in the office; he wore overalls and was paid off Wednesday of each week with the laborers in cash, and not with the officers who were paid by check; the forms which he filled out and which were furnished him were marked where he signed, "Foreman", and the evidence of the defendant does not explain why he reported as foreman; when breaks would come in the machinery at night he would repair them if he could, and if not Andersen was called in or it was passed over until the next day. The evidence is further without dispute that he did not have the authority to hire or fire the negroes working with him; he had to report to Andersen and have him fire such laborers as he found were not doing their work; he did not fix their rate of pay, it was fixed either

---

[3] Helliwell v. Haberman, 2 Cir., 140 F. 2d 833 (4); Schmidtke v. Conesa, 1 Cir., 141 F.2d 634 (1) and (2); Smith v. Porter, 8 Cir., 143 F.2d 292 (1) and (2); Fleming v. Hawkeye Pearl Button Co., 8 Cir., 113 F.2d 52 (8); Bowie v. Gonzalez, 1 Cir., 117 F.2d 11, page 16.

[4] Among other things he testified that during all of the busy season (some 7 months), there was an oiler who did the oiling and that during the slack season there was only one machine in operation, that he had no duty to make any repairs other than emergency repairs, the day crew and day engineer kept the plant up and in good condition, that such emergency repairs were usually minor and that only a few, which took any appreciable time to fix, had occurred in the whole of the time in question.

by Andersen or in the office. It was the duty of Allen to do all the repair work that he could, to test about fifteen or twenty valves each hour, and when ice was stored across the Waterville Road he had to walk 500 or 600 feet from the engine room over there and make checks and test the valves. This work was separate and apart from work in the engine room. Very little of Allen's time was given to the direction of the negro employees who worked with him at night; most of his time was spent in inspecting and checking the valves, making repairs, oiling the machinery, and helping out when the labor was short. The defendant offered no evidence as to the number of hours spent by Allen in the nonexempt work. A. J. Gordon, Division Manager, Sam G. Pair, Manager, Atlantic Company in Macon, and Harry Andersen, chief engineer of the Macon plant, were the only three witnesses who testified for defendant, and their evidence throws little light on the actual work performed by Allen at night. Gordon testified that it was necessary for Allen to determine the degree of refrigeration necessary in the coils and the cold storage room, that he could not testify as to what extent Allen was supposed to handle either himself or by supervision the work of others, that he could only testify about it generally. Andersen testified: "Q. Did you direct Mr. Allen as to what to do at night? A. Indirectly. I don't know hardly how to answer that." The evidence is virtually without dispute that Allen spent from one to two hours each night oiling the machinery in addition to making repairs, that approximately 50 per cent of his work each night on an average was nonexempt labor.

At the conclusion of the evidence the court gave to the jury a directed verdict for defendant.

The evidence leads me to conclude that the defendant kept its force in this plant cut to a minimum, which made it necessary for Allen to perform much nonexempt labor.

The burden was on the defendant to show that Allen was exempt from the Fair Labor Standards Act. Helliwell v. Haberman, 2 Cir., 140 F.2d 833; Schmidtke v. Conesa, 1 Cir., 141 F.2d 634.

To permit this defendant to give title to an employee who is required thereafter to perform duties approximately fifty per cent of which consists of nonexempt labor is to open the way to break down the mandates of the Fair Labor Standards Act. Schmidtke v. Conesa, 1 Cir., 141 F.2d 634. Cf. Knight, Inc. v. Mantel, 8 Cir., 135 F.2d 514; Bowie v. Gonzalez, 1 Cir., 117 F.2d 11; Smith v. Porter, 8 Cir., 143 F.2d 292; Fleming v. Hawkeye Pearl Button Co., 8 Cir., 113 F.2d 52; United States v. American Trucking Associations, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345.

I am of opinion that the directed verdict for the defendant was erroneous.