WALLING, Administrator of Wage and Hour Division, United States Department of Labor, v. GENERAL INDUSTRIES CO.

No. 22449.

District Court, N. D. Ohio, E. D.

April 16, 1945.

Charles A. Reynard and Frank R. Dittoe, both of Cleveland, Ohio, for plaintiff.

Reese Dill and Glenn O. Smith, both of Cleveland, Ohio, for defendant.

WILKIN, District Judge.

The complaint sought an injunction to restrain defendant from violating Section 15(a) (1), 15(a) (2), and 15(a) (5) of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 215(a) (1, 2, 5). The amended answer admitted jurisdictional facts and said that the operations of the defendant had at all times complied with the provisions of said Act. The case was presented upon the evidence, arguments, and briefs.

The primary issue is whether the four employees involved in this action are exempt from the overtime provisions of Section 7 of the Act by virtue of Section 13(a) (1), 29 U.S.C.A. §§ 207, 213(a) (1), and the regulations promulgated thereunder. A secondary issue is whether the monthly salary paid to the employees satisfies the overtime compensation requirements of Section 7. In other words, the court must determine, first, whether the employees were bona fide executive or administrative employees, and, second, if it finds that they were not, whether the amount paid for overtime was less than the minimum required by the Act.

Three of the employees, Jasper Page, Peter Spooner, and Fred Stegman, were operating engineers. They had engineer's licenses. They manned in three successive shifts the power plant of the defendant and were all under the direction of one Lattiman, who was "boss" over the whole power plant and boiler room. The defendant generated its own power and required high pressure steam in connection with the manufacture of plastic products. It was the duty of the engineers to keep the ma-

chinery of the power plant in good operating condition. They did packing, wiping, mopping, oiling, repairing, and such other duties as are generally performed by engineers in similar positions. There were in the power plant three generators, two compressors, pumps, engines, and other equipment. The engineers read the gauges, listened for sounds indicative of any disorder, made minor adjustments, and reported to their immediate superior any failure or breakdown for which they were unable to provide. Time was when the engineers gave directions to the employees in the boiler room. But recently because of Union difficulties the boiler stokers declined to take orders from the engineers, except Lattiman, the chief engineer. It was of course the duty of the engineer in charge to take appropriate action to keep a supply of steam necessary to operate the plant. The power plant was dependent on steam from the boiler room.

Each of the three engineers was paid a salary of $210 a month and allowed certain other benefits, such as insurance, etc.

The fourth employee involved in this action, Clarence Payne, was assistant paymaster and worked directly under L. J. Monroe, who was paymaster. Most of his working time was spent in operating and adjusting tabulating machines. Two other employees served under the direction of Payne. The tabulating machines had to be altered and changed from time to time to meet the requirements of different reports. This employee had been given special training so that when he was informed as to what information was required by the various reports he would know how to shift and alter the tabulating machines in order to meet the requirements. He had necessarily to understand the purpose and requirements of the reports requested by government and company officials. The detail work of assembling the information was done by machinery rather than by clerks. The employees under Payne were machine operatives, whose work was conceded to be manual. This employee received a salary of $230 a month and other benefits.

It seems to the court that the three engineers meet the requirements of Section 541.1 of the regulations made pursuant to Section 13(a) (1) of the Act; in other words, it seems to the court justifiable for the company to class the engineers as executives. It may fairly be said that:

(A) Their primary duty was the management of the department or subdivision where they were employed.

(B) There were no other employees in that department or subdivision, but through the chief engineer they did direct the work of the boiler stokers. They had authority from the company to do so directly.

(C) Their recommendations as to change of status of other employees would be given particular weight. A boiler stoker would necessarily be subject to their suggestions.

(D) They customarily and regularly exercised discretionary powers. Complicated machinery vital to the plant was entrusted to their care.

(E) Their salary basis was not less than $30 a week.

(F) In the very nature of the situation it is difficult to say what per cent of the work done was of the same nature as that performed by non-exempt employees. But the evidence failed to convince the court that it exceeded 20% of the number of hours worked in the work week. It is questionable whether (F) should apply to these employees because they are in sole charge of the power plant, which is a rather independent establishment from the rest of the factory.

It seems to the court that the fourth employee, Payne, is justifiably classified as an administrative agent under Section 541.2 of said regulations:

(A) He is compensated for his services on a salary basis at a rate not less than $200 a month.

(B) (1) He regularly and directly assists an employee employed in a bona fide executive or administrative capacity (the paymaster), and a great deal of assistance is non-manual in nature and requires the exercise of discretion and independent judgment.

(2) He performs, under only general supervision, responsible non-manual work along specialized or technical lines requiring special training, experience, and knowledge and which requires exercise of discretion and judgment. The adjustment and alterations of the tabulating machines is technical and requires special training.

The main contention of the plaintiff was that the classification given to these employees was unwarranted and in violation

of the regulations promulgated by the Administrator of the Act. The evidence failed to support that contention. Some latitude must be allowed employers.

The evidence fails wholly to convince the court that there was any intention on the part of the employer to circumvent or evade the requirements of the Act or that the total payments made to these employees are below the minimum required by the Act if figured on the original unit labor cost basis. The evidence shows that the salaries were arrived at after negotiations with Union representatives and that in fixing the amount the company gave consideration to regular pay and time and a half for overtime. Subsequently they were increased to the amount now being paid. It was approved by the Salary Stabilization Agency. The contention, therefore, that the present salaries fail to take account of the requirement for time and a half for overtime is not sustained by the weight of the evidence. If that arrangement is to be set aside, then, in all fairness, the original rate should be restored or a new hour-rate would have to be agreed upon.

With reference to Payne, the company wrote a letter to the Wage and Hour Division setting forth the duties of the employee and asking how he should be classified. The Regional Attorney at that time thought the company would be justified in classifying the employee as exempt. The court does not mean to imply that the Administrator is bound by the opinion of the Regional Attorney based upon an ex parte presentation, but the court does consider that the action of the company sustains the finding of the court that the classifications were bona fide. The court furthermore feels that there is a necessity for considering certain employees as executives or administrators when they are entrusted with the complex and delicate machinery of modern times. It often requires as much skill, discretion and judgment to keep such machinery in harmonious operation as to keep subordinates in cooperation. Payne had charge not only of delicate and complex machinery but also other employees. The case for his exempt classification is even stronger than the case for the engineers.

The court does not discuss and distinguish the numerous cases cited. As courts have remarked, each stands upon its own facts. This court, however, relies on the principles announced in Walling v. A. H. Belo Co., 316 U.S. 624, syl. 1 and 2,

62 S.Ct. 1223, 86 L.Ed. 1716; St. Clair v. Russell & Pugh Lumber Co., D.C. Idaho, 51 F.Supp. 47; Lynch et al. v. Vincent et al., D.C.Mo. 55 F.Supp. 44; Stanger et al. v. Glenn L. Martin Co., D.C.Md., 1944, 56 F.Supp. 163; H. H. Allen v. Atlantic Co., 5 Cir., 145 F.2d 761.