## MARIAN et al. v. LOCKHEED AIRCRAFT CORPORATION.

### Civil Action No. 1878.

District Court, N. D. Texas, Dallas Division.

March 23, 1946.

Albert S. Reagan and Oscar Harrell, both of Dallas, Tex., for plaintiffs.

Paul A. Carrington and Arthur Riggs, both of Dallas, Tex., and William Cantrell, Jr., Asst. Atty. Gen., for defendant.

ATWELL, District Judge.

Leaving out some settlements that were effected, there are, at present, the following plaintiffs:

| | |
|---|---|
| E. C. Zrenner, | Morris E. Hamilton, |
| A. H. Little | N. J. Daugherty, |
| Ralph B. Hulick, | Sidney M. Walls, |
| E. E. Longbrake, | William Houk, |
| C. C. Durbin, | James O. Schultz, |
| W. E. Trimble | Howard Kemp |
| Paul Cunningham | M. Baumgardner |
| A. H. Polser | B. A. Logan, |
| Dale H. Marian | R. R. Smith, |
| Max Harris | Jack Groom, |
| H. W. Fielding, | S. G. Bolender |
| Fred T. Deahl, | H. K. Powell |
| John Brinegar, | E. P. Shelby, |
| Clyde O. Turner, | Don Chapman, |
| Robert Rawson, | C. M. Ranck, |
| John H. Mann, | |

These plaintiffs were employees of the defendant.

The defendant, Lockheed, installed and operated at Dallas, Texas, an auxiliary of its main California unit, for the modification and war-fitting of airplanes, for use during the war.

Its contract was with the United States on a cost plus ten per cent basis. Its contracts with its employees, payrolls, records and work were subject to inspection by

the Treasury Department of the United States, and in accordance with Treasury regulations, the Wage and Hour Act, the War Labor Board, the Stabilization Unit, and the United States Army.

I think it may be safely concluded that its output was interstate commerce.

Secs. 201–219, 29 U.S.C.A., Fair Labor Standards Act, with exemptions shown in Sec. 13(a), as those exceptions apply to Secs. 206 and 207 which prescribe maximum hours and minimum wages, are the study texts.

Each of the plaintiffs received considerably in excess of $200 per month. Each of the plaintiffs was the supervisor over groups of workmen ranging from, approximately, eight to fifty.

Sec. 13(a), so far as relevant, is as follows:

"The provisions of sections 206 and 207 shall not apply with respect to (1) any employee employed in a bona fide executive (or) administrative * * * capacity, * * * (as such terms are defined and delimited by regulations of the Administrator), * * *."

The Administrator has defined "Executive," in Sec. 541.1, and "Administrator," in Sec. 541.2, of Applicable Regulations. Without quoting these sections in full, the thought that one whose primary duty consists in the management of a customarily recognized department or subdivision thereof, and who customarily directs the work of the other employees therein, and who has authority to hire or fire other employees, or whose suggestions and recommendations as to hiring or firing, and as to advancement and promotion, or any other change of status of other employees, shall be given particular weight, and who customarily and regularly exercises discretionary powers, and who is compensated on a salary basis of not less than $30 per week, and whose hours of work of the same nature as that performed by nonexempt employees, do not exceed 20% of the number of hours worked in the work-week by the non-exempt employees under his direction is exempt.

Administrative, which is dealt with in Sec. 541.2, covers largely the same as that covered by Sec. 541.1, but puts under the coverage of the exemption clause such supervising head of a group as may render assistance of a non-manual nature, and which requires the exercise of discretion and independent judgment, related to management policies or good business operations, along specialized or technical lines requiring special training, experience, or knowledge, and which requires the exercise of discretion and independent judgment.

■ 1. The first inquiry is interstate commerce. That may be answered for the plaintiffs.

2. The second question presented by the defendant's plea of estoppel, based upon the plaintiffs' continuing to sign pay-rolls and accept the position of supervisors and leaders and chose to lead the main paying agency, to-wit, the United States, into believing that it was settling each month or each week its liability, may be passed without answer, because a decision of the cause must go for the defendant upon the question of the applicability of the statute to the plaintiffs.

The issue that furnishes the battle-ground itself, is trimmed by the size of the compensation received by each plaintiff, determined and known as salary on a weekly basis without computing the hourly rate. It, in each case, was largely in excess of $200 per month.

Each plaintiff, as has already been noted, was the supervisor and director of groups of workmen. Each plaintiff was specially learned and fitted for the direction of the work which was under his charge and for which he was responsible. He sought the superior position. He was mentally alert, solicitous and anxious for its accuracy and speed. The recommendations of each as to hiring and firing was given special weight and consideration. The suggestions as to promotions and demotions were, likewise, deeply and conscientiously considered by those who were in the upper brackets of the autonomy of the defendant's operating machinery.

The word, "non-manual," in the definition of bona fide, is somewhat troublesome because actual experience teaches that the effective, thorough, conscientious executive or administrator, frequently lends his own hands, in addition to the words of advice, encouragement and enlightenment, as he teaches and instructs those for whose work he is responsible, and whose

work he desires to press to a speedy and accurate conclusion.

Such physical participation as the testimony shows was of the nature just described. If the mind hesitates in that conclusion it must also be satisfied that such physical efforts were more than 20% of the work week time in order to deprive the group leader, or, supervisor, of the right to be known as a bona fide executive or administrator. The testimony is wholly unsatisfactory to show any such percentage. Such testimony as was introduced along that line by both sides, was purely guess-work. Guess-work that was inspired by the interest of either side, and in the face of instructions from those of higher authority.

The entire life of the defendant's plant seems to have been built upon the worthiness and fitness of those who won the right to be leaders or were chosen because of special ability. In two or three of the groups the work would seem to be simple, but it must be remembered that the plant was a place of precision. The safety of the uniformed forces of the United States was at issue. A speck of dust, or, the slipping or falling of a workman, or, any apparently inconsequential occurrence might have serious precussion. Janitor service, the service of firemen who were on watch for the protection of the plant, and the thousands who worked therein; the cleanliness of the building, the perfection of the tools, the accuracy in checking them in and in checking them out, were all departments or groups that may not be minimized. · They all relate to either office or field work directly related to management policies or general business operations, along specialized or technical lines requiring special training, experience, or knowledge, and each of which requires the exercise of discretion and independent judgment.

 Giving effect to these regulations of the Administrator, which are reasonable, and which seem to be in harmony with the purpose of the legislation and which do not impinge upon the legislative power of the Congress, the cause must be determined for the defendant. Stanger et al. v. Glenn L. Martin Co., D.C., 56 F.Supp. 163; Allen v. Atlantic Company, 5 Cir., 145 F.2d 761, and Smith v. Porter, 8 Cir., 143 F.2d 292.