## HOFF et al. v. NORTH AMERICAN AVIATION, INC.

### Civil Action No. 1970.

District Court, N. D. Texas, Dallas Division.

June 20, 1946.

Carter, Gallagher & Barker, of Dallas, Tex., for plaintiffs.

Carrington, Gowan, Habberton, Johnson & Walker, of Dallas, Tex., and Carl Enggas, of Kansas City, Mo., for defendant.

ATWELL, District Judge.

In studying the questions involved in this litigation, it will assist to bear in mind

that the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., was not a child of the controversy between the nations in which we so recently engaged. It was of earlier origin. More than the ordinary conception period was passed through before it was constitutionally born. It sought to remedy an evil. The evil of the sweatshop. The evil of the underpaid manual laborer, male and female. Fleming v. Hawkeye, 8 Cir., 113 F.2d 52. In order to do that, it was necessary for the Congress to find some constitutional way to interfere with the right of contract which has always existed between the employer and the employee. Under our system of government, that territory seemed almost forbidden to governmental order. The citizen made his own arrangements. The Congress entered that forbidden field and took that right away from the employer and employee in order to remedy a situation which, in its judgment, seemed to need remedying. It operated upon such contracting parties as engaged in interstate commerce.

When World War 2 broke, the government assisted in financing, conducting and supervising the production of needed impedimente. This included cost plus contracts, executive boards to supervise various features of those who accepted such contracts, and such other supervisory steps as seemed necessary to stabilize wages, secure effective instruments of warfare and keep in working order statutes and regulations for the harvesting of the great arsenal purpose which was absolutely necessary to victory and to a continuity of orderly national conduct.

One of such activities was conducted in the name of the defendant.

The entire output of the plant was for use by the Armed Forces of the United States and its allied friends. It was among the largest, if not the largest, in the world, having a roof area of sixty-seven acres. It employed from 15,000 to about 40,000 people. In the neighborhood of 25,000 airplanes were completed and shipped in its operation for fifty-two months, or an average of 460 planes per month.

The fixed price for each plane was fixed by contract with the United States, and the cost of the labor that went into the plane was extremely important. The maximum production was imperative and the high wage rate was thought to assist in that direction.

A cost accounting system which tabulated the man hours spent on each project or sub-division thereof, was vital to manufacturing perfection as well as to fixing the final cost of that item. This system made individual designation of sub-assembly and complete assembly necessary, and such work was assigned to a particular work order. These work orders were made up of a number of columns which not only showed the work done on the particular project, but also the time that the worker begun to work, as well as other details.

The timekeepers were required to record and allocate on these cards the amount of time spent each day by each workman on each of the parts, thus insuring an accurate check on the parts going through the hands of each man, the number of hours spent by such men on each part, and the particular job he was performing. This task called for a thorough knowledge of manufacturing procedure, a careful coordination with the cost accounting and payroll divisions, as well as the production department.

Schools were even conducted to insure adequate timekeeping personnel.

We visualize, then, the vast horde of busy workmen under the supervision of hundreds of trained time-keepers.

Over such whole, there was a department head, and assistant department head, foremen and assistant foremen, as well as the audit section. The plaintiffs are all assistant foremen, or, foremen, the most of them being assistant foremen, sometimes called in the testimony, "supervisors." Thus, assistant foremen, as well as foremen, not only had the power but upon them was imposed the duty of the settlement of problems that might arise between time-keeper and worker, by reason of the proper placing of project, price, and the understanding of departmental manual, or, bulletins. They also prepared merit ratings, reprimanded, exercised discretion in the recommendation with reference to hiring and firing, in the administration of first-line requisite efficiency. All of such

judgment and discretion and recommendation were given great weight by those in the higher brackets, such as department heads. Each assistant foreman had under him, groups running from fifteen to twenty-five persons. They were required to enforce manual disciplinarism in the matter of dress and sobriety, as well as general fitness for the work. Each received approximately $300 per month, nearly all of them in excess of that amount, and such amount was received as a salary and not on an hourly basis. Such manual work as was performed for the time-keepers, who were under them, was emergency. As each time-keeper was responsible for the accuracy and efficiency of the workers under him, so each assistant foreman was responsible for the accuracy and efficiency of the time-keepers under him.

Emergency happenings, such as an unexpected absence, or, discipline, were supposed to be cared for by auxiliary time-keepers, or, by a time-keeper temporarily moved from another part of the work. If such auxiliary person was not available, there were times when the assistant foremen temporarily performed such services.

Leaving out of consideration, any question of limitation and the right of two surviving widows of deceased foremen to appear as plaintiffs, the other question centers around the contention of the plaintiffs that the statute and the regulations in their exemption of executive and administrative employees may not be invoked by the defendant because the plaintiffs each performed the tasks of time-keepers, for more than 20% of the number of hours worked in which the non-exempt employees under their direction, engaged.

The Administrator's definitions with reference to this particular matter are found in Sec. 541.1, relating to executive employees, and Sec. 541.2, relating to administrative employees. The statute would seem to be satisfied by a single definition, but since there was some dissatisfaction with such singleness, two definitions have been passed down to us.

"Executive," and "Administrative," are certainly in the same field, but the definition of "executive" ties together a number of requisites by the use of the word, "and," while that which relates to "administrative," uses the word, "or," as to three of the parts but makes the minimum amount of salary to be $200 per month. The compensative in the "executive" description is a salary of not less than $30 per week. Each definition seems to the thinker to be somewhat academic, because the very words, themselves, import authority, discretion and certain powers which are ordinarily incident to the not-at-all disliked American word, "boss."

To make these thoughts slightly more clear, the definitions are precisely as follows:

"The term 'employee employed in a bona fide executive * * * capacity' in section 13(a) (1) of the Act shall mean any employee

"(a) whose primary duty consists of the management of the establishment in which he is employed or of a customarily recognized department or subdivision thereof, and

"(b) who customarily and regularly directs the work of other employees therein, and

"(c) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight, and

"(d) who customarily and regularly exercises discretionary powers, and

"(e) who is compensated for his services on a salary basis at not less than $30 per week (exclusive of board, lodging, or other facilities), and

"(f) whose hours of work of the same nature as that performed by nonexempt employees do not exceed 20 percent of the number of hours worked in the workweek by the nonexempt employees under his direction; Provided, That the [sub-section (f)] shall not apply in the case of an employee who is in sole charge of an independent establishment or a physically separated branch establishment."

"The term 'employee employed in a bona fide * * * administrative * * * capacity' in section 13(a) (1) of the Act shall mean any employee

"(a) who is compensated for his services on a salary or fee basis at a rate of not less than $200 per month (exclusive of board, lodging, or other facilities), and

"(b) (1) who regularly and directly assists an employee employed in a bona fide executive or administrative capacity (as such terms are defined in the regulations in this part), where such assistance is nonmanual in nature and requires the exercise of discretion and independent judgment; or

"(2) who performs under any general supervision, responsible nonmanual office or field work, directly related to management policies or general business operations, along specialized or technical lines requiring special training, experience, or knowledge, and which requires the exercise of discretion and independent judgment; or

"(3) whose work involves the execution under only general supervision of special nonmanual assignments and tasks directly related to management policies or general business operations involving the exercise of discretion and independent judgment."

I have already mentioned the facts concerning the scope, the power, and something of the duties of each of the plaintiffs, leaving out of consideration two widows, and speaking of their deceased husbands only, as assistant foremen. As each of those men appeared and testified, there was a display of alertness, quickness of perception, clarity of speech, and every indication of their right to lead and direct, instruct and advise the groups and workers who were under them. They performed their duties well and were, apparently, quite satisfied with their respective positions. They knew of the purposes of the keeping of the records, in all of their essential details, and the relying of the United States upon the accuracy of such records and the efficiency of the work performed by the worker, the timekeeper, and the assistant foremen who were responsible for them. They exhibited a complete right to be given such leadership and pay.

Their effort to explain that they had worked at the same tasks that the timekeepers who were under them had worked, for an excess of 20%, included the thought that there was a large percentage of absenteeism among timekeepers. That proof was a failure. Each of them was deeply interested in the outcome of the cause. The witnesses who did not agree and who testified otherwise, were all disinterested with one exception. In truth, this identical department was shown to be among the leaders of the defendant's plant as against absenteeism.

A careful study of the testimony results in the conviction that judgment should be ordered for the defendant.

Counsel on both sides have been diligent in the preparation of the cause, and in the presentment of assisting briefs.

Some of the cases cited by the plaintiffs are: Walling v. Yeakley, 10 Cir., 140 F. 2d 830; Snyder v. Wessner, D.C., 55 F. Supp. 971; Helliwell v. Haberman, 2 Cir., 140 F.2d 833, cited in Snyder v. Wessner, supra; Fellabaum v. Swift, D.C., 54 F. Supp. 353; Marshall-Wells Co. v. Hawley, D.C., 53 F.Supp. 295; Walling v. General Industrial Co., D.C., 60 F.Supp. 549; Cassone v. William Edgar John, Inc., 185 Misc. 573, 57 N.Y.S.2d 169; McNeal v. Central Greyhound, D.C., 66 F.Supp. 581; Allen v. Atlantic Co., 5 Cir., 145 F.2d 761.

The defendant cites, Marian v. Lockheed, D.C., 65 F.Supp. 18; Allen v. Atlantic Co., 5 Cir., 145 F.2d 761; Smith v. Porter, 8 Cir., 143 F.2d 292; Marshall Wells Co. v. Hawley, D.C., 53 F.Supp. 295; Anderson v. Federal Cartridge Co., D.C., 62 F.Supp. 775; Smith v. Porter, 8 Cir., 143 F.2d 292; Walling v. General Industries, D.C., 60 F.Supp. 549; Christiansen v. United States Gypsum, D.C., 66 F.Supp. 835; Walling v. Newman, D.C., 61 F.Supp. 971; Stanger v. Glen L. Martin Co., D.C., 56 F.Supp. 163.

We deal with a huge enterprise comprehending many efficient departments performing delicate and highly essential parts in a reliable entity, governed and directed into such efficiency by capable heads, foremen and assistant foremen.

Judgment for the defendant.