Samuel C. ASHCRAFT, Appellant,

v.

UNITED SUPERMARKETS, INC., Appellee.

No. 07–87–0250–CV.

Court of Appeals of Texas, Amarillo.

Sept. 22, 1988.

Rehearing Denied Oct. 27, 1988.

---

Huffaker, Green and Huffaker, Gerald Huffaker, Tahoka, for appellant.

McCleskey, Harriger, Brazill & Graf, Jim Hund, Lubbock, for appellee.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

BOYD, Justice.

Appellant Samuel C. Ashcraft appeals from the judgment in favor of appellee United Supermarkets, Inc. on his claim for overtime compensation. In five points of error, appellant claims the trial court erred in entering judgment for appellee because there is no evidence to support the jury's answer to Special Issue No. 1, wherein they found appellant was employed in a bona fide executive capacity. Alternatively, appellant argues that the jury's answer was contrary to the overwhelming weight and preponderance of the evidence or was based on insufficient evidence. Lastly, appellant argues that, as a matter of law, appellant was not employed in a bona fide executive capacity. We affirm the judgment.

With regard to a legal insufficiency point, this Court will consider only the evidence tending to support the finding, viewing it in the most favorable light in support of the finding, giving effect to all reasonable inferences that may properly be drawn therefrom and disregarding all conflicting evidence. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). Where the challenge to a jury finding is framed as an insufficient evidence point, this Court is to consider all the evidence in the case, both that in favor of and that contrary to the finding, to determine if the challenged finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

In considering an insufficient evidence point, we must remain cognizant of the fact that it is for the jury, as the trier of fact, to judge the credibility of the witnesses, to assign the weight to be given their testimony, and to resolve any conflicts or inconsistencies in the testimony. In accomplishing that task, the jury is privileged to believe all, part, or none of the testimony of any one witness. *See Taylor v. Lewis*, 553 S.W.2d 153, 161 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.). This Court may not substitute its judgment for that of the jury if the challenged finding is supported by some evidence of probative value and is not against the great weight and preponderance of the evidence. *Alford, Meroney & Co. v. Rowe*, 619 S.W.2d 210, 213 (Tex.Civ. App.—Amarillo 1981, writ ref'd n.r.e.).

In August of 1973, appellant began work as the meat market manager for the United

Grocery Store in Post, Texas. Appellant continued as the meat market manager until October 5, 1982.

Prior to August 1, 1980, appellant was paid on an hourly basis of $9.40 per hour. Any time over forty hours per week was considered overtime pay, and for this overtime pay, appellant was compensated at the rate of time and one-half. In July of 1980, appellee changed its policy with respect to compensation of market managers, such as meat market managers. Appellee, beginning August 1, 1980, began compensating its market managers at the rate of $400 per week plus a bonus of 6% of the net profits of the store over $10,400. The new policy required managers to work a minimum of fifty-four hours per week. On August 1, 1981, the minimum hours were reduced to forty-eight hours per week. Appellee argues that the new policy made no provision for overtime compensation since market managers, including meat market managers such as appellant, were bona fide executive employees and exempt from overtime compensation under federal law.

The Fair Labor Standards Act provides that no employee shall work longer than forty hours in any work week unless that employee receives compensation for the time worked in excess of forty hours at the rate of not less than one and one-half the regular rate at which he is employed. 29 U.S.C.S. § 207(a)(2) (1975). However, an employer such as appellee is exempt from paying such overtime where the employee is employed in a "bona fide executive" capacity. 29 U.S.C.S. § 213(a)(1) (1975).

The Fair Labor Standards Act also provides that the Secretary of Labor may, from time to time, promulgate regulations regarding the term "bona fide executive capacity." 29 U.S.C.S. § 213 (1975). Pursuant to that authority, the Secretary has issued regulations defining the term "an employee employed in a bona fide executive capacity." 29 C.F.R. § 541.1 (1983). Section 541 provides as follows:

> The term "employee employed in a bona fide executive ... capacity" in section 13(a)(1) of the act shall mean any employee:
>
> (a) Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof; and
>
> (b) Who customarily and regularly directs the work of two or more other employees therein; and
>
> (c) Who has the authority to hire or fire other employees or whose suggestions or recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and
>
> (d) Who customarily and regularly exercises discretionary powers; and
>
> (e) Who does not devote more than 20 per cent, or, in the case of an employee of a retail or service establishment who does not devote as much as 40 per cent, of his hours of work in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (d) of this section: *Provided*, That this paragraph shall not apply in the case of an employee who is in sole charge of an independent establishment or a physically separated branch establishment, or who owns at least a 20 per cent interest in the enterprise in which he is employed; and
>
> (f) Who is compensated for his services on a salary basis at a rate of not less than $155 per week (or $130 per week, if employed by other than a Federal Government in Puerto Rico, the Virgin Islands or American Samoa), exclusive of board, lodging, or other facilities: *Provided*, That an employee who is compensated on a salary basis at a rate of not less than $250 per week (or $200 per week if employed by other than the Federal Government in Puerto Rico, the Virgin Islands, or American Samoa), exclusive of board, lodging, or other facilities, and whose primary duty consists of the management of the enterprise in which the employee is employed or a customarily recognized department or subdivision

thereof, and includes the customary and regular direction of the work of two or more other employees therein, shall be deemed to meet all the requirements of this section.

The charge in the case at bar detailed the definitions found in the above subsections (a), (b), (c), (d) and included:

(5) who does not devote as much as 40% of his hours of work in a work week to activities which are not directly and closely related to the performance of the work described in Paragraphs (1) through (4).

The jury found that appellant was employed in a bona fide executive capacity as defined in the charge.

Appellee admits that it carries the burden of establishing appellant's exemption from overtime compensation. *Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190, 86 S.Ct. 737, 15 L.Ed.2d 694 (1966). However, the parties disagree as to whether the "short test" or "long test" of section 541.1 applies. Appellant argues that he is a craftsman and, thus, should be evaluated under the "long test," which, in fact, is the test the charge contains. Appellee, on the other hand, argues that appellant failed to plead the "craftsman issue" and even if the issue was preserved, the "short test" still applies.

In support of its position that appellant loses even if the "craftsman issue" was preserved, appellee relies on *Guthrie v. Lady Jane Collieries, Inc.*, 722 F.2d 1141 (3d Cir.1983). This case is distinguishable. In *Guthrie*, which involved a suit by eight employees for overtime pay, one employee contended that he was a "craftsman" and that the "long test" applied to him. The Court stated that the evidence showed that the employee was "more an instructor than a mechanic at the time he performed 'mechanic's' duties" and that his position as assistant mine foreman did not depend upon his status as mechanic/electrician. *Id.* at 1147–48. Therefore, the Court found the "short test" to be applicable. *Id.* at 1148. The Court went on to find this employee an exempt "executive" under the "short test." *Id.* In the case at bar, appel-

lant's skills as a butcher were an integral part of his responsibilities in running the meat market and supervising its employees, facts which are different from those in *Guthrie*.

■ Parenthetically, we note appellant did not request an issue as to whether he was a "craftsman" and did not object to the charge for its failure to submit that issue. That being the case, that particular question would not support a reversal of the trial court's judgment. *Pratt v. City of Denton*, 670 S.W.2d 786, 789 (Tex.App.—Fort Worth 1984, no writ); *Harris County Welfare Unit v. Caloudas*, 590 S.W.2d 596, 598 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ); Tex.R.Civ.P. 277, 279. However, the "long test" was submitted to the jury and for the purpose of our discussion we will assume, arguendo, that that submission was proper and will discuss whether the evidence sufficiently supported the jury's finding.

■ Jacky Pierce was called by appellant as an adverse witness. He testified that he is currently employed by appellee as a general supervisor, and that he previously worked for appellee as a meat market manager. He described his duties as a meat market manager as running the market, cutting meat, waiting on customers, cleaning out cases, putting on tags and wrapping meat. From 1969 to 1971, meat market managers were paid a weekly salary plus bonus of four percent of the store's profits. He described his duties under that payment plan as additionally including watching the back of the store for the store manager.

In 1971, appellee changed its payment plan to an hourly basis plus overtime. This plan continued until August of 1982, when appellee went to a salary plan of $400 a week plus 6% of the store's net profit over $10,400, with a minimum work week of fifty-four hours. Pierce stated that the new plan was established to give the meat market manager a chance to make more money, participate in the profits of the company and become more involved in the store.

Pierce stated that appellant's additional duties under the new payment plan were to help the store manager run the store and to operate the meat market. He said meat market managers are considered executives, although they are required to punch a clock. He agreed that appellant performed some of the same duties as other employees of the meat market, such as cutting meat, waiting on customers, pricing meat, wrapping it, cleaning out shelves, stocking shelves and unloading trucks, but that the other employees worked at his direction and under his control.

Pierce also said that meat market managers keep tonnage records, run cutting tests, reduce prices on meat with a shelf life of five days, are involved in the hiring of employees to work under their supervision, schedule employees' hours, order meat, see salesmen, and keep the back door locked to the meat market. He admitted that a good butcher is a highly skilled individual. Pierce testified that appellant was influential in the installation of a chicken broaster in the meat market.

Appellant testified that his duties involved unloading trucks, cleaning counters, cutting meat and waiting on customers, just as did the other employees in the market. He said he had no additional duties under the new payment plan, except to work fifty-four hours minimum. He stated that he had authority to lower prices with a long shelf life. He said he had to go through a supervisor to hire employees.

Appellant said he spent ninety to ninety-five percent of his time doing labor and the other five percent supervising, which he described as basically clerical work. He said that he ordered meat from the Lubbock office. Appellant said he was asked if he wanted the new chicken broaster in his market, but that he previously did not know what it was or did.

Appellant admitted the supervisor used his input in hiring employees and that appellant scheduled their hours, trained them and supervised them. On cross-examination, he agreed that the chicken broaster was his "brainchild," "more or less." He stated that his primary duty was running the meat market and supervising the employees.

A former assistant manager of the store testified that appellant was responsible for the management of the meat market and supervision of its employees. He also said he observed appellant perform many of the same duties as other meat market employees.

Although the testimony was conflicting, we find there was sufficient probative evidence to support the jury's finding that appellant was a "bona fide executive" as described in the charge and the federal regulations. The evidence showed that appellant did more than common labor and supervision of the employees in the meat market. *See Brennan v. Whatley*, 432 F.Supp. 465, 469 (E.D.Tex.1977); *Klotz v. Ippolito*, 40 F.Supp. 422, 426 (S.D.Tex. 1941). There was evidence that his recommendations and input as to hiring and firing were given special weight and consideration. The fact that he joined with the other employees in performing the responsibilities of cleaning, wrapping and tagging meat, and cutting up meat, does not necessitate the decision that he had removed his hat as "manager" to encourage and instruct those for whose work he was responsible. *Marian v. Lockheed Aircraft Corporation*, 65 F.Supp. 18, 19 (N.D.Tex.1946). The evidence showed that he received $400 per week, plus bonus, was in charge of at least two employees in the meat market, scheduled employees' time schedules, gave input in hiring and firing, and performed specific administrative reports necessary to maintain the operation of the market. *See Hoff v. North American Aviation*, 67 F.Supp. 375 (N.D.Tex.1946). We, therefore, overrule appellant's points of error.

All of appellant's points having been overruled and there being no reversible error, the judgment of the trial court is affirmed.