SMITH et al. v. PORTER et al.
No. 12808.

Circuit Court of Appeals, Eighth Circuit.
June 20, 1944.

J. W. Dickey, of Pine Bluff, Ark. (A. H. Rowell, of Pine Bluff, Ark., and Baucum Pulkerson and A. F. House, both of Little Rock, Ark., on the brief), for appellants.

S. Lasker Ehrman, of Little Rock, Ark. (Owens, Ehrman & McHaney, of Little Rock, Ark., on the brief), for appellees.

Before GARDNER, JOHNSEN, and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

The appellants brought this suit against the appellees to recover overtime compensation provided by the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq. Appellees defended on the grounds: (1) that appellants were not engaged in commerce or in the production of goods for commerce, and (2) conceding that they were so engaged, that appellants were not entitled to recover because employed by appellees in a bona fide executive capacity, as defined and delimited by the administrator, within the meaning of section 13(a) (1) of the Act, exempting such employees from the wage and hour provisions of the Act. The case was tried without a jury. The district judge found that the evidence sustained the appellees' second defense, that it was unnecessary to consider the first, and entered judgment in favor of appellees.

Appellees, a partnership under the name of Sanderson & Porter, entered into a contract with the United States in which they agreed to construct an arsenal for the manufacture of munitions. Appellees were to be paid the actual cost of construction plus a fixed fee. The arsenal covers an extensive area near Pine Bluff, Arkansas. The construction contract required that appellees build the necessary railway tracks to connect the plant with adjacent railroads and for the movement of materials and products within the plant. Appellees had nothing to do with the operation of the plant.

Appellants were employed by appellees as railroad foremen, supervising the labor of the men engaged in the construction of the railroad tracks. They were employed at salaries of $60 a week. The men under their supervision were employed at hourly wage rates of from 40 to 46 cents an hour. Appellant Smith was first employed at a wage rate of 52 1/2 cents an hour and was later promoted, according to his own testimony, "to railroad foreman and paid $60 a week."

The construction contract provided that:

"The Contractor shall be reimbursed * * * for such of his actual expenditures * * * as are included in the following items:

"(a) All labor * * *.

*      *      *      *      *      *

"(h) Salaries of resident engineers, principal assistant engineers, engineers, architects, superintendents, timekeepers, foremen and other technical, administrative and other employees of the Contractor * * *. In case the full time of any employee of the Contractor is not applied to the work, his salary shall be included in this item only in proportion to the actual time applied thereto."

The contractors were required to pay "all mechanics and laborers * * * without subsequent deduction or rebate on any account * * * at wage rates not less than those determined by the Secretary of Labor for the work herein specified and stated in the attached schedule of minimum wage rates, * * * and to "compensate laborers and mechanics for all hours worked by them in excess of eight hours in any one calendar day at a rate not less than one and one-half times the basic rate of pay of such laborers and mechanics * * *."

All construction work of appellees was under the direct supervision and control of an engineer of the United States, known as the area engineer. Under the supervision of the area engineer was a project auditor, employed by the Government, in charge of accounting and auditing. The salaries of the foremen were fixed by negotiations between the contractor and the area engineer. When a laborer was employed, he was classified by the office of the project auditor, and his hourly wage was fixed in conformity with the schedule of wages approved by the Secretary of Labor. The basic work week on the project was 40 hours in the case of both salaried employees and laborers.

The appellants during many weeks of their employment worked more than 40 hours. They were not compensated in accordance with the provisions of the Fair Labor Standards Act of 1938 for hours in excess of 40. In weeks in which they

worked less than 40 hours, they were paid only for the number of hours worked. For example, if a railroad foreman in one week worked only 38 hours, his compensation for that week was 38/40 of his weekly salary of $60.

Section 13(a) of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 213(a), provides:

"(a) The provisions of sections 206 and 207 [the sections of the Act fixing minimum hourly wage rates and compensation for overtime] of this title shall not apply with respect to (1) any employee employed in a bona fide executive * * * capacity * * * (as such terms are defined and delimited by regulations of the Administrator) * * *."

Pursuant to the authority granted in this section, the administrator has defined the term "bona fide executive employee" as an employee:

"(A) whose primary duty consists of the management of the establishment in which he is employed or of a customarily recognized department or subdivision thereof, and

"(B) who customarily and regularly directs the work of other employees therein, and

"(C) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight, and

"(D) who customarily and regularly exercises discretionary powers, and

"(E) who is compensated for his services on a salary basis at not less than $30 per week * * *, and

"(F) whose hours of work of the same nature as that performed by nonexempt employees do not exceed twenty percent of the number of hours worked in the work-week by the nonexempt employees under his direction * * *." 7 Fed.Reg. 332, 2 CCH Labor Law Service, par. 31,301.01.

This definition of the term "employee employed in a bona fide executive capacity" was in effect at all times involved in the present action. No question is raised by either party concerning its validity. It may be noted, however, that this regulation of the administrator has been sustained in its entirety in Fanelli v. United States Gypsum Co., 2 Cir., 141 F.2d 216; and as to particular provisions in Ralph Knight, Inc., v. Mantel, 8 Cir., 135 F.2d 514, and in Walling v. Yeakley, 10 Cir., 140 F.2d 830.

The district judge made separate findings of fact to the effect that the work of appellants met each of the six tests which were prescribed by the administrator for the classification of an employee as a bona fide executive employee. He concluded that appellants came within the exemption provision in section 13(a)(1) of the Fair Labor Standards Act and entered judgment for appellees. The points relied on by appellants for reversal are that the court erred in finding: (1) that they managed a recognized department of appellees' construction work; (2) that they regularly directed the work of other employees in such a department; (3) that their suggestions as to hiring or firing were given particular weight; (4) that they exercised discretionary powers; and (5) that they did not devote more than 20 per cent of their time to work of the same kind done by the laborers under them.

Appellants are correct in saying that the section of the Fair Labor Standards Act of 1938 granting exemptions from the general scope of the Act is to be strictly construed. One claiming an exemption granted by the Act must establish his right by a clear preponderance of the testimony (Fleming v. Hawkeye Button Co., 8 Cir., 113 F.2d 52; Helena Glendale Ferry Company v. Walling, 8 Cir., 132 F.2d 616; Ralph Knight, Inc., v. Mantel, supra), and in the present action the appellees carried the burden of proving the qualification of each of the appellants under each of the six subdivisions of the administrator's definition and delimitation of the expression "employee employed in a bona fide executive * * * capacity." The regulations of the administrator set out in the conjunctive six conditions, each of which must be fulfilled before an employee may be denied the benefit of the overtime provisions of the Act. Helliwell et al. v. Haberman, 2 Cir., 140 F.2d 833; Fanelli v. United States Gypsum Co., supra. On the other hand, the finding of the judge in a case tried without a jury may not be set aside on appeal unless clearly erroneous within the meaning of Rule 52(a) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c. The findings of fact of the trial judge are not clearly erroneous unless unsupported by substantial evidence, or clearly against the

weight of the evidence, or induced by an erroneous view of the law. "This Court, upon review, will not retry issues of fact or substitute its judgment with respect to such issues for that of the trial court. * * * The power of a trial court to decide doubtful issues of fact is not limited to deciding them correctly." Cleo Syrup Corporation v. Coca Cola Co., 8 Cir., 139 F.2d 416, 417, and cases cited.

▇ The question for decision in this case is whether there is sufficient basis in the evidence for the court's findings of fact. In deciding that question we are required to take that view of the evidence which is most favorable to the appellees.

▇▇ We can not say from the whole record that any questioned finding of the district judge is clearly erroneous. The precise question here is not whether the appellants were employed in an executive capacity within the meaning the phrase may have in common usage, but whether appellants were so employed within the definition as promulgated by the administrator under authority of law. The administrator's definition was adopted after a hearing participated in by representatives of industry and labor. The intended scope of the definition is indicated by the following quotation from the report made to the administrator by the officer before whom the hearings were held:

"The present definition of the terms 'executive' and 'administrative' applies with particular aptness to persons who are commonly called 'bosses.' The range of exemption is broad. It extends from the president of a large and complex corporate structure down to the foreman in charge of a very minor department." 2 CCH Labor Law Service, par. 31,302.08.

It is not contended that the administrator could not legally distinguish between foremen and laborers on the ground that the former were employed in an executive capacity and the latter were not, a distinction usually demanded by organized labor and recognized in labor legislation. In this case the distinction has further recognition by the Department of Labor, in which the administration of the Fair Labor Standards Act of 1938 is one of the divisions, in the fact that the Secretary of Labor, in fixing the minimum hourly wages which the contractor was permitted to pay labor, made no provision for wages of foremen. Appellants were classified as foremen, employed and paid as such. The highest weekly compensation which any of the laborers under their direction could have received for the longest work-week put in by them, computed according to the overtime provisions of the Fair Labor Standards Act, would have approximated one-half of the weekly salary paid appellants. This disparity in compensation between appellants and the men under their direction justifies the inference that the appellants, the appellees, and the representatives of the Government in charge of the work, with power to supervise compensation, understood that appellants were to perform services, managerial and executive in character, and to exercise discretion and judgment in the direction of those under them.

The appellees maintained a recognized department for the construction of railway tracks. Appellants directed the laborers under them in the performance of the work and controlled and managed its execution. In the work of track construction, appellants supervised groups of laborers varying in number from two or three to forty-five. There was substantial evidence to sustain the court's finding that appellants were managers of a recognized subdivision of the track construction operations of appellees, and regularly directed the work of other employees therein.

The evidence is sufficient to sustain the court's finding that appellants' suggestions as to hiring or firing and as to change of status of employees under them were given particular weight by appellees. The recommendations of appellants were considered by the responsible heads of the department, investigated, and acted upon by them. That appellants did not have authority to employ or discharge laborers or that their recommendations concerning a change of status were not always accepted is not conclusive on the issue. Marshall-Wells Co. v. Hawley, D.C., 53 F.Supp. 295.

The court's finding that appellants customarily and regularly exercised discretionary powers is supported by the testimony. Appellants exercised discretion in the recommendations to their superiors concerning changes of status of the men under them, in directing the men under them in the proper method of performance of their work, in the exercise of their judgment as to what was required in the performance of the work and as to the best method of performance. The evidence shows that

they were dispatched to the point where needed with instructions to do the work, the manner of its accomplishment being left to their judgment, free from immediate supervision or direction.

Nor can we say the trial judge was clearly in error in finding that the appellants did not devote more than 20 per cent of their time in doing the same kind of work as that done by the laborers under them. Appellants were employed as foremen, their duties being to direct the laborers under them. Appellants were not required to do any of the actual labor in the construction of the railway tracks, except when it was necessary to demonstrate to the men under them how the work should be done. Appellant Smith was promoted to the position of foreman from work for which he was paid on an hourly basis, his higher pay being approved by the area engineer on the ground of increased responsibility and change of duties. The evidence of the appellants on this point is not in agreement. One testified that he spent 90 per cent of his time doing the same work as the men under him; the other said that he spent approximately 20 per cent of his time at such work. Both foremen were engaged in the same character of work, and were directing the work of men of similar experience and ability. They attempt to support their claim of labor in excess of 20 per cent of their time by the statements that the men under them were totally inexperienced in railroad work, and that, in order to teach them how the work was to be done, they were compelled by way of demonstration to devote much of their time to the work of the laborers. But neither kept any record of the time spent in this manner. Their testimony concerning it was concededly based upon estimates after the work was done, and the disparity between the estimates of the two appellants is not easily explained.

In their reply brief, filed on the day of the submission of this case, appellants, for the first time, advanced the contention that they were not compensated on a salary basis, but at an hourly wage rate. The foundation for this argument is the testimony in the record to the effect that, when salaried employees of the appellees failed to work 40 hours in any one work-week, their compensation for that week was reduced in the proportion which their hours of absence from work bore to 40 hours. This is said to show that appellants were employed at an hourly wage in-

stead of on a weekly salary. This point was not included in appellants' brief in the statement of points intended to be relied on, as required by Rule 11b of this court. It does not appear from the record that the issue was raised or relied upon in the trial court, or that any objection was entered to the court's ruling. In these circumstances appellants are not entitled, as of right, to rely upon it here. Mill Owners Mutual Fire Ins. Co. v. Kelly et al., 8 Cir., 141 F.2d 763; Cohen v. United States, 8 Cir., 142 F.2d 861. Moreover, it seems clear from the testimony that appellants were employed at weekly salaries of $60. The fact that, if they were absent from work, the deductions from their weekly salaries were measured by their hours of absence does not convert their contracts of employment on a salary basis into contracts of employment at an hourly wage.

Judgment affirmed.