MID–CONTINENT PETROLEUM CORPO-
RATION v. KEEN.

KEEN v. MID–CONTINENT PETROLEUM
CORPORATION.

Nos. 13261, 13267.

Circuit Court of Appeals, Eighth Circuit.

Sept. 18, 1946.

Rehearing Denied Nov. 22, 1946.

J. P. Greve, of Tulsa, Okl. (R. H. Wills, of Tulsa, Okl., on the brief), for Mid-Continent Petroleum Corporation.

Leslie L. Boomhower, of Mason City, Iowa (L. R. Boomhower, of Mason City, Iowa, on the brief), for C. R. Keen.

Frederick U. Reel, Sr. Atty., U. S. Department of Labor, of Washington, D. C. (William S. Tyson, Sol., Bessie Margolin, Asst. Sol., Reid Williams, Regional Atty., and Morton Liftin, Atty., all of the United States Department of Labor, all of Washington, D. C., on the brief), for amicus curiae, Administrator, Wage and Hour Division, U. S. Department of Labor.

Before SANBORN, WOODROUGH, and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

C. R. Keen brought this action against the Mid-Continent Petroleum Corporation under section 16(b) of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 216 (b), to recover unpaid overtime compensation, liquidated damages, and attorney's fees. From a judgment in favor of Keen both parties have appealed.

Mid-Continent is a producer and wholesale distributor of petroleum products. It distributes the products of its refinery at Tulsa, Oklahoma, as well as petroleum products purchased from others, in a number of States including Iowa, Minnesota, and Wisconsin. Its northern division which includes the States mentioned above is managed from a regional office at Waterloo, Iowa. All of the petroleum products distributed by Mid-Continent in these States are brought into them from other States, delivered to bulk plants maintained by the company, and from these bulk plants distributed to retail service stations handling the company's products. Within the States comprising its northern division, Mid-Continent maintains and operates approximately 150 bulk plants. The bulk plants supply several hundred retail service stations in the same territory. One hundred twenty-four of the bulk plants and many retail service stations are in Iowa, Minnesota, and Wisconsin.

The bulk plants are adjacent to railroad tracks. At all of them there are tanks for the reception and storage of gasoline, usually tanks for the handling of kerosene, and at some of them warehouses for the handling of lubricating oil. All of the bulk plants are equipped with the necessary pipes, electric motors, and gasoline engines used in unloading tank cars of gasoline and kerosene arriving at the storage plants by railroad, and in transferring the contents of the tank cars to the storage tanks of the bulk plants and from the storage tanks to tank trucks which deliver the gasoline and kerosene to the retail service stations.

All but a negligible number of the retail service stations are either owned by Mid-Continent or held by it under long-term leases and subleased by Mid-Continent to the station operators. Two or three of the retail service stations are operated by Mid-Continent. A few are privately owned. Mid-Continent maintains and keeps in repair the equipment in all of the service stations owned or held by it under lease and the equipment of some of the private stations.

Approximately ninety per cent of the gasoline distributed in Iowa and Minnesota is brought into those States from Oklahoma through the line of the Great Lakes Pipe Line Company, a common carrier of gasoline, owned by Mid-Continent and other oil companies. The pipe line company maintains a terminal at St. Paul, Minnesota, and terminals at three points in Iowa. When Mid-Continent delivers a quantity of gasoline to the pipe line company in Oklahoma, it receives from the pipe line company a credit for the same quantity of the same grade of gasoline at a designated terminal of the pipe line company. The gasoline at the terminals of the pipe line company is in one common mass from which the oil company owners withdraw gasoline to the extent of the credit maintained by them. Mid-Continent maintains sufficient credit at the pipe line terminals to take care of its anticipated needs for twenty to thirty days. It withdraws gasoline from the terminals and loads the gasoline into railroad tank cars in which it is transported to the various bulk plants within the State in which the terminal is located. Sometimes the gasoline while at the terminal is blended, seasoned, and dyed.

All of the gasoline and kerosene handled at the bulk plants in Wisconsin and all of the kerosene handled at the bulk plants in Minnesota and Iowa is delivered to the bulk plants in railroad tank cars coming from other States. The proportion of the gasoline and kerosene received at bulk plants in Minnesota and Iowa by railroad tank cars direct from other States is approximately thirty-five to forty per cent of the total of such products handled through the plants. The ordinary bulk plant has a storage capacity of 50,000 to 60,000 gallons of gasoline. Mid-Continent maintains a sufficient supply of gasoline at the plants to meet the anticipated demands of the re-

tail service stations for a period of twenty to thirty days. The plants' supply of kerosene and lubricating oil is sufficient to meet anticipated demands for a somewhat longer period. Shipments of petroleum products to the bulk plants are not pursuant to prior specific orders, but are based on anticipated customer needs. Mid-Continent's customer retail service stations constitute a large and stable group.

During the period for which Keen was allowed to recover he was employed under an oral contract in the capacity of maintenance man for a work week of fluctuating hours. For the first part of the period his regular paydays were the first and fifteenth of the month, and for the latter part, the fifth and the twentieth. He was charged with the maintenance of 63 bulk plants located in Iowa, Minnesota, and Wisconsin, and with the maintenance of the equipment of the retail service stations served by these plants. As required by his contract of employment he maintained his residence in Mason City Iowa. Much of his time in Mid-Continent's employment was spent in traveling from Mason City to the bulk plants and service stations where his services were required, and from bulk plant to bulk plant and service station to service station. For this purpose he was furnished with a truck equipped with tools and supplied with parts and materials usually required in his maintenance and repair work. His work required him to drive his truck across State lines. On infrequent occasions he carried across State lines materials especially ordered for use at his destination. He maintained the truck and kept it in operating condition. At the bulk plants Keen inspected and maintained the engines, motors, pumps, and other equipment used in unloading gasoline and kerosene from railroad tank cars into the bulk plant tanks. Broken or worn out equipment was repaired or replaced by him. He was also charged with installation work at the bulk plants. In general, his duty during the period in question in connection with bulk plants was to keep the facilities functioning, so that gasoline and kerosene could be safely and efficiently unloaded from railroad tank cars into the bulk plants storage tanks, and from them transferred to the tank trucks which distributed the gasoline and kerosene to service stations. He was also required to inspect and keep in repair and in safe operating condition pumps, air compressors, air lines, and gasoline lines in use in service stations, and, when necessary, the tanks at the service stations into which gasoline from the bulk stations was delivered by the company's tank trucks. By far the greater part of his work was done in Iowa and Minnesota.

Keen was required by his contract of employment to make out daily reports of his activities. In general these reports listed the hours spent by him in traveling by motor truck, the time spent by him at each plant or service station, and a statement of what he did while there. As printed in the record, however, the evidence does not give the latter information except in the case of the bulk stations.

The unloading of gasoline and kerosene from the railroad tank cars at the bulk plants was a vital and indispensable part of Mid-Continent's business operations and an essential and component part of the transportation of the products distributed by it. Keen had no part in the work of unloading the petroleum products received at the bulk plants.

The District Court concluded that the interstate transportation of the petroleum products distributed by Mid-Continent was not completed "until the gasoline and kerosene were inside the reception tanks at Mid-Continent's bulk plants"; that Keen, when engaged in work at the bulk plants, was engaged in commerce within the meaning of the Fair Labor Standards Act, and not so engaged when working at the retail service stations; that under the facts and circumstances in this case one-half hour or more spent by Keen in any work week at a bulk station constituted a substantial portion of such week, entitling him to the benefit of the Act as to all hours worked in that work week. The court was also of the opinion that Keen was not engaged in commerce when driving his truck across State lines in the absence of a showing that the crossing of State lines was done to perform work in commerce, or that when crossing State lines during the period in suit he

transported materials or supplies in his truck.

This action was commenced in the District Court on October 5, 1944. Keen sought to recover overtime compensation for all hours in any work week in excess of the maximum permitted by the Fair Labor Standards Act for the period beginning October 24, 1938, and ending July 15, 1941. The court ruled that Keen's claim for overtime compensation based on overtime hours prior to October 1, 1939, was barred by the Iowa Statute of Limitations (five years) applicable to claims founded on unwritten contracts (section 11007, subsection 5, 1939 Code of Iowa).

The net result of the court's findings of fact and conclusions of law was that Keen recovered overtime compensation for all work weeks during the period for which his recovery was not barred by limitations and in which he worked for one-half hour or more at a bulk station. There were only two weeks in this period in which Keen did no work at bulk stations. In these two weeks he drove his motor truck across State lines. These trips were made for work at retail service stations. The evidence does not show what work he did at the retail service stations on these trips, or whether he transported materials of any kind across State lines. Judgment was for the plaintiff in the sum of $323.39 for unpaid overtime compensation, a like amount as liquidated damages, and $400 for attorney's fees.

The parties are agreed that Keen was never engaged in the production of goods for commerce within the meaning of the Fair Labor Standards Act and that the judgment in his favor may be sustained only if the evidence in this case establishes that he was engaged in commerce. The principal question on Mid-Continent's appeal is whether the evidence shows that Keen's activities were actually in or so closely related to the movement of goods in commerce as to be a part of it. McLeod v. Threlkeld, 319 U.S. 491, 497, 63 S.Ct. 1248, 87 L.Ed. 1129; Walling v. Mutual Wholesale Food & Supply Co., 8 Cir., 141 F.2d 331, 335.

■ We agree that Keen was engaged in commerce within the meaning of the Fair Labor Standards Act during all work weeks in which he worked a substantial part of his time at Mid-Continent's bulk plants. Whether the District Court was correct in basing its decision on the point in question upon the fact that Keen maintained the appliances used in transferring gasoline and kerosene from railroad tank cars into the storage tanks at the bulk plants, where, in the court's opinion the transportation of these products in interstate commerce terminated, is on the evidence in this case an academic question which we do not decide. For, obviously, the petroleum products remained in the channels of commerce until they reached the service stations. The petroleum products were transported in commerce to the bulk plants with the intention on the part of Mid-Continent, in advance of transportation, that all of the products (except incidental sales) would go to certain retailers, the service stations handling Mid-Continent products. The retail service stations were the intended final destinations of all of the petroleum products. The temporary storage of the petroleum products in the tanks at Mid-Continent's bulk plants was merely "a convenient intermediate step in the process of getting them to their final destination." Walling v. Jacksonville Paper Co., 317 U.S. 564, 568-570, 63 S.Ct. 332, 87 L.Ed. 499; Walling v. Mutual Wholesale Food and Supply Co., supra. And see Republic Pictures Corporation v. Kappler, 8 Cir., 151 F.2d 543, 162 A.L.R. 228, affirmed, 66 S.Ct. 523; A. H. Phillips, Inc. v. Walling, 1 Cir., 144 F.2d 102; Walling v. American Stores Co., 3 Cir., 133 F.2d 840.

■ Two or three of the retail service stations were owned and operated by Mid-Continent and were therefore a part of a wholesale retail organization of the character discussed in the Mutual Wholesale Food and Supply Company case. All but an insignificant number of the remaining retail service stations were either owned outright or were held under long-term leases by Mid-Continent, and together with the appliances used in them, were main

tained by Mid-Continent under some agreement with the operators. There is no intimation in the evidence that the retail service stations sold other than Mid-Continent products or that the bulk plants made more than occasional and incidental sales to customers other than the service stations. Compare Walling v. American Stores, supra, 133 F.2d at page 846. Some of the gasoline handled by the service stations was delivered to them under an understanding with Mid-Continent to keep the tanks at the service stations full. The bulk plants which served these retail service stations were not in competition with other similar plants of other wholesale distributors of petroleum products for the patronage of the Mid-Continent service stations. They were not independent wholesalers but merely the agencies of Mid-Continent for the wholesale storage and distribution of its products to the retail service stations. Compare DeLoach v. Crowleys, Inc., 5 Cir., 128 F.2d 378; Allesandro v. C. F. Smith Co., 6 Cir., 136 F.2d 75, 149 A.L.R. 382. In these circumstances we think it can not be said that the gasoline, kerosene, and lubricating oil were held at Mid-Continent's bulk plants in like manner as "goods acquired and held by a local [wholesale] merchant for local [distribution]." Under the Jacksonville Paper Company case (317 U. S. at page 570, 63 S.Ct. 332, 336, 87 L.Ed. 499), these petroleum products remained in the channels of commerce while in the storage tanks of the bulk plants and until they reached the retail service stations. The evidence concerning the terms of the understanding between the lessee-operators and Mid-Continent was in the possession of Mid-Continent. The agreement between them was the best if not the only available evidence conclusively establishing the relationship between them. This evidence was not produced. "Where relevant evidence is within the control of the party to whose interest it would naturally be to produce it and he fails so to do, without satisfactory explanation, and produces no evidence or weaker evidence, an inference is justifiable that it would be unfavorable to him." Goldie v. Cox, 8 Cir., 130 F.2d 695, 719; Donnelly et al. v. Dubinsky et al., 8 Cir., 154 F.2d 38.

Since the petroleum products distributed by Mid-Continent remained in the channels of commerce until delivered to the retail service stations, the bulk plants were instrumentalities of commerce employed in actual transportation in commerce. All of Keen's activities in maintaining the plants were likewise in commerce. McLeod v. Threlkeld, supra; Overstreet v. North Shore Corporation, 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656; Overnight Motor Transportation Co. v. Missel, 316 U.S. 572, 573, 62 S.Ct. 1216, 86 L.Ed. 1682; Walling v. Mutual Wholesale Food & Supply Co., supra, 141 F.2d at page 339.

Mid-Continent also argues that the judgment of the District Court must be reversed as to thirty of the seventy four weeks for which Keen recovered overtime compensation, on the ground that in these weeks Keen devoted a substantial portion of his time in maintaining his truck and driving it across State lines, and was for that reason exempt from the coverage of the Fair Labor Standards Act by section 13(b) (1) of the Act, which provides that:

"The provisions of section 7 shall not apply with respect to (1) any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section 204 of the Motor Carrier Act of 1935 * * *."

See Southland Gasoline Co. v. Bayley et al., 319 U.S. 44, 63 S.Ct. 917, 87 L.Ed. 1244.

On this contention the burden of proof was on Mid-Continent. Smith v. Porter, 8 Cir., 143 F.2d 292, 294. The claim of exemption is an affirmative defense which should have been, but was not, raised in Mid-Continent's pleadings. Schmidtke v. Conesa, 1 Cir., 141 F.2d 634, 635. The exemption was not urged in the trial court nor was the issue decided there. Nor is the point included in Mid-Continent's statement of points relied on as required by Rule 11(b) of this court. Smith v. Porter, supra, 143 F.2d at page 296. The question is not open for our consideration.

What has been said disposes of all the assignments of error on Mid-Continent's appeal except its contention that the court erred in holding that Keen devoted a sub-

316

stantial part of his time in commerce in two weeks in which he was employed at bulk plants for only one-half hour. The problem presented by this assignment has been considered by the courts in many cases involving widely varying fact situations. Southern California Freight Lines v. McKeown, 9 Cir., 148 F.2d 890; New Mexico Public Service Company v. Engel, 10 Cir., 145 F.2d 636; Brown v. Minngas Co., D. C., 51 F.Supp. 363; North Shore Corporation v. Barnett, 5 Cir., 143 F.2d 172; Schwarz v. Witwer Grocery, 8 Cir., 141 F.2d 341; Richardson v. James Gibbons Co., 4 Cir., 132 F.2d 627; West Kentucky Coal Co. v. Walling, 6 Cir., 153 F.2d 582; Hanson v. Lagerstrom, 8 Cir., 133 F.2d 120; Schmidt v. Peoples Telephone Union of Maryville, Mo., 8 Cir., 138 F.2d 13. These and other like cases show the impossibility of fixing by rule applicable to all cases the line of demarcation between what is and is not a substantial amount of work in commerce.

■ The District Court did not hold nor do we that one-half hour spent in commerce in any work week is in all circumstances such a substantial part of the employee's time as to entitle the employee to overtime compensation for the entire week. The District Court's holding is based upon the particular circumstances revealed by the evidence in this case. Mid-Continent is engaged in the production and transportation of goods in commerce. Keen was employed for work in commerce, and his activities in commerce were as regular and continuous as the needs of his employment demanded. A part of Keen's time in each work week was spent in making out written reports of his activities for each day during the week, in maintaining the truck used by him in traveling to and from his work, and in keeping the truck equipped with the tools and supplied with the materials necessary to the performance of his work. A great part of the time in each work week was occupied in driving the truck to and from the places at which he worked. How much of Keen's time in these activities in the work weeks in question was required by his work at bulk plants is not disclosed by the record. That some of it was properly to be allocated to the bulk plant work is beyond

question, as is the fact that the evidence showing the portion properly to be allocated to bulk plant work was or could have been known to Mid-Continent from Keen's daily reports which, in the words of the District Court, "showed in detail how Keen spent his time." Compare Anderson et al. v. Mt. Clemens Pottery Co., 66 S.Ct. 1187. In these circumstances we are unable to say that the District Judge was in error in including the two weeks in question in the number for which Keen was allowed to recover overtime compensation.

On Keen's appeal the points relied upon are alleged errors of the court (1) in its ruling on the statute of limitations applicable to Keen's cause of action, (2) in refusing to hold that Keen was engaged in commerce while working at the retail service stations, and (3) in the computation of Keen's overtime compensation.

■ Section 11011 of the Code of Iowa, 1939, provides:

"When there is a continuous, open, current account, the cause of action shall be deemed to have accrued on the date of the last item therein, as proved on the trial."

By Section 11007 it is provided that actions founded on unwritten contracts must be brought within five years after the cause of action accrues. We think the court properly applied the Iowa Statute of Limitations. Keen was employed on an unwritten contract under which his wages and his overtime compensation for definite periods became due and payable at stated times. His cause of action for overtime compensation accrued on each payday. Atlantic Co. v. Broughton, 5 Cir., 146 F.2d 480. The action in the present case was founded on his contract of employment and not upon an open continuous current account. Republic Pictures Corporation v. Kappler, supra; Du Bois v. City of Oskaloosa, 229 Iowa 109, 294 N.W. 302; Sammon v. Roach, 211 Iowa 1104, 235 N.W. 78.

■ We agree with the trial court that the evidence failed to show that Keen was employed in commerce within the meaning of the Fair Labor Standards Act while working at the service stations. It is the work of Keen which is decisive here. McLeod v. Threlkeld, supra, 319 U.S. at page

497, 63 S.Ct. 1248, 87 L.Ed. 1129. As we have seen, petroleum products distributed by Mid-Continent ceased to be in the channels of commerce after they came to rest in the service stations. Much of Keen's work in these stations had to do with the maintenance of appliances used exclusively for the distribution of gasoline and other petroleum products at retail. Such work was not in commerce. The most that can be said of the other activities of Keen at the retail service stations is that occasionally he may have been employed in the installation or repair of the tanks in which the gasoline was received and held at the service stations. Only two work weeks in the period for which Keen's action was not barred by limitations are involved. There is no evidence to show what Keen did at the service stations in either of these weeks. Nor does the evidence show that in traveling to and from the service stations in these weeks he transported any goods across State lines.

 There was no error in the court's computation of Keen's overtime compensation. The grounds for this assignment of error are that the court in computing overtime used the formula for such computation for work weeks of fluctuating hours (Overnight Motor Transportation Co. v. Missel, supra) and failed to include in hours worked the hours in which Keen was absent from work because of illness. But Keen testified that he was employed for a work week of fluctuating hours. And, obviously, when Keen was absent from work because unable to work, he was neither working nor standing ready to work.

In the brief of the Administrator filed amicus curiae it is said that the District Court was in error in holding that under the evidence Keen was not engaged in commerce during the weeks in which he drove his truck across State lines. Keen recovered for all of these weeks except the two weeks in which he did no work at bulk plants. In these weeks he drove from Mason City, Iowa, to points in Minnesota and return. The evidence fails to show the purpose of this interstate travel, except that it was made for work at retail service stations. Whether on the trips in question Keen carried any materials or supplies in his truck does not appear. Nor does the evidence show what work Keen did at the service stations. Keen does not assign this ruling of the court as error in his statement of points relied upon in this appeal. We do not decide the question.

The District Court awarded Keen a judgment of $400 for an attorney's fee. On the ground that the District Court did not take into consideration the likelihood of an appeal in fixing the amount of the attorney's fee, we are asked to allow additional compensation for attorney's services in this court. The amount of attorney's fee allowed by the District Court exceeded the amount of overtime compensation recovered. Only four witnesses were called in the case. There was practically no dispute in the evidence. We can not say that the fee allowed Keen's counsel by the District Court was not adequate compensation for services both in the District Court and in this court.

The judgment of the District Court is affirmed.