ALTON T. ARMSTRONG v.
THE UNITED ILLUMINATING COMPANY

SUPERIOR COURT     NEW HAVEN COUNTY     FILE No. 66300

Memorandum filed April 11, 1947.

*James F. Rosen,* of New Haven, for the Plaintiff.

*Wiggin & Dana,* of New Haven for the Defendant.

TROLAND, J. The plaintiff was employed by the defendant from January 23, 1942, to November 30, 1942, as a member of defendant's plant protection staff with the title "Lieutenant of the Guards," and he now seeks to recover compensation at the rate of one and one-half times his regular rate for all hours claimed to have been worked by him in excess of forty hours each work week during said period, and also to recover an equal amount as liquidated damages and the allowance of a reasonable attorney's fee as authorized by § 16 (b) of the Fair Labor Standards Act of 1938 (52 Stat. 1069; 29 U. S. C. § 216).

Up to the time of the Japanese attack at Pearl Harbor on December 7, 1941, the plant of the United Illuminating Company in New Haven was protected by a few watchmen on the gate, under the jurisdiction of a superintendent. After Pearl Harbor the plant was guarded temporarily by a detachment of the Connecticut state guard, operating twenty-four hours a day, for whose convenience the United Illuminating Company built barracks to accommodate thirty men.

At or about this time, as a result of a conference at Hartford with the governor of Connecticut and a representative of the United States army, it was arranged that the defendant as well as other companies would take over its own guarding. In fur-

therance of this plan, Fred H. Barton, a construction engineer employed by the defendant, was placed in charge of plant and property protection for United Illuminating Company and instructed to organize a guard force to replace the state guard.

The employment supervisor of the company was requested to advertise for guards, and the watchmen then employed were incorporated in the guard force. In January, 1942, the plaintiff filed with the employment supervisor an application for a position as guard. At this time Mr. Barton, head of plant pro tection, desired to have the company employ a man who could fill the post of lieutenant, relieving him of supervision of the guard, to train the guards in their duties, including the handling of the pistol. After an examination of the guard applications and an interview with the plaintiff, he was hired on January 22, 1942, to organize and supervise company guards of the New Haven division; the plaintiff's salary was fixed at $45 per week.

The plant of United Illuminating Company was very valuable. The mission of the guard force was the protection of this plant, particularly against sabotage, twenty-four hours a day. When constituted, the guard force was divided into three shifts of guards, each headed by a sergeant. The tour of duty for each shift was eight hours per day. Although the responsibility for supervision was clearly on the plaintiff, as lieutenant, for the efficient twenty-four hour performance of duty of the guard, nevertheless it seems equally clear that when he was employed it was contemplated that his normal period of actual attendance at the plant would be forty hours a week.

The first question to be determined is whether the plaintiff is covered by the provisions of the Fair Labor Standards Act of 1938. Section 7 of the act (29 U. S. C. § 207) provides that no employer shall employ for a work week of more than forty hours, unless compensated at the rate of one and one-half times his regular rate, ". . . any of his employees who is engaged in commerce or in the production of goods for commerce . . ."

The plaintiff has alleged in his complaint that he was employed by the defendant "in commerce and/or in the produc-tion of goods for commerce." This allegation the defendant has denied. The burden of proof as to this allegation is on the plaintiff. The defendant is engaged in manufacturing, generating, distributing and selling electricity for light and power to large industrial plants in Connecticut. Some of its customers

it admits are engaged in commerce or in the production of goods for commerce. Defendant also furnishes electric current to the New York, New Haven and Hartford Railroad Company, to light its station in New Haven and its offices.

The court is of the opinion that the defendant is in commerce and in the production of goods for commerce.

The test of coverage however is whether the employee is engaged in commerce or in the production of goods for commerce and not whether the employer is so engaged. *McLeod v. Threlkeld,* 319 U. S. 491; *Kirschbaum v. Walling,* 316 U. S. 517. This test raises a close and difficult problem under the facts proven herein. As stated by Mr. Justice Frankfurter in *Kirschbaum v. Walling,* supra, 520: "To search for a dependable touchstone by which to determine whether employees are 'engaged in commerce or in the production of goods for commerce' is as rewarding as an attempt to square the circle." The Fair Labor Standards Act puts upon the courts the independent responsibility of applying the terms of the statute to an infinite variety of complicated industrial situations. The plaintiff was not engaged in the physical process of making electricity. This *is not necessary.* He was engaged in guarding and protecting the generating plant. This activity during his whole period of employment was, however, in the courts opinion, a necessary process of occupation to enable the defendant to produce electricity, and the guarding of this vital public utility in wartime was such a close and immediate tie with the process of production for commerce, and so much an essential part of it, that the court regards the occupation of supervisor of the guards as necessary to the production of defendant's goods for commerce. *Kirschbaum v. Walling,* supra.

The plaintiff entered upon his employment January 23, 1942, and continued therein until November 30, 1942. During this period he worked more than forty hours per week in forty-one weeks, as shown by his payroll record. This raises the next question, whether plaintiff is entitled to additional unpaid overtime compensation for the hours he has so worked.

The court is of the opinion he is entitled to such compensation unless the defendant has sustained the burden of proving its second defense, that the plaintiff was employed in a bona fide executive or administrative capacity, so that by reason thereof the provisions of the Fair Labor Standards Act of 1938 do not apply to his employment.

Section 13 (a) of the act states that the provisions of § 7 (requiring the payment of overtime) ". . . shall not apply with respect to (1) any employee employed in a bona fide executive . . . capacity . . . (as such terms are defined and delimited by regulations of the Administrator)" 29 U. S. C. § 213 (a).

The regulations of the administrator define employment in a bona fide executive capacity as follows:

"*Executive*. . . . The term 'employee employed in a bona fide executive . . . capacity' in Section 13 (a) (1) of the Act shall mean any employee

"(A) whose primary duty consists of the management of the establishment in which he is employed or of a customarily recognized department or subdivision thereof, and

"(B) who customarily and regularly directs the work of other employees therein, and

"(C) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight, and

"(D) who customarily and regularly exercises discretionary powers, and

"(E) who is compensated for his services on a salary basis at not less than $30 per week (exclusive of board, lodging, or other facilities) and

"(F) whose hours of work of the same nature as that performed by nonexempt employees do not exceed twenty per cent of the number of hours worked in the work-week by the nonexempt employees under his direction; provided that this subsection (F) shall not apply in the case of an employee who is in sole charge of an independant establishment or a physically separated branch establishment."

In *Smith* v. *Porter*, 143 F. 2d 292, 295, 7 F. R. 332; 2 C. C. H. Labor Law Service 31, 301.01, the court considers the effect of the wage and hour administrator's definition of an executive as set forth above:

"The precise question here is not whether the appellants were employed in an executive capacity within the meaning the phrase may have in common usage, but whether appellants were.

so employed within the definition as promulgated by the administrator under authority of law. The administrator's definition was adopted after a hearing participated in by representatives of industry and labor. The intended scope of the definition is ·indicated by the following quotation from the report made to the administrator by the officer before whom the hearings were held:

'The present definition of the terms 'executive' and 'administrative' applies with particular aptness to persons who are commonly called 'bosses'. The range of exemption is broad. It extends from the president of a large and complex corporate structure down to the foreman in charge of a very minor department.' 2 CCH Labor Law Service, par. 31, 302.08." The defendant does not press that the plaintiff was an "administrative employee."

The court has carefully considered the testimony bearing on the question as to whether the plaintiff was an "Executive" as defined by the administrator of the act. The plaintiff's primary duty was the management of the guard force at English Station of the defendant. This was a customarily recognized subdivision of defendant's plant protection department. This meets the requirement of paragraph A of the definition. The plaintiff customarily and regularly directed the work of other employees therein. He supervised and directed the work of three sergeants and about twenty guards. This satisfies paragraph B of the definition.

The plaintiff had no authority to hire or fire other employees, but his suggestions as to hiring and firing and as to the advancement and promotion of other employees was given particular weight by the defendant. The plaintiff exercised authority to pass on applications for employment and to suspend members of the guard force from duty pending their dicharge, and recommended promotions from guards to sergeants and the demotion of sergeants to guards.

After his employment, the only guards hired, eleven in number, first received his interview and approval. The plaintiff recommended the promotion of four guards to be sergeants and such promotions were made. The plaintiff recommended the demotion of one sergeant Kittell, and this demotion was made.

The court is satisfied, after consideration of the evidence and the claims of the parties, that the plaintiff's suggestions as to hiring and firing and as to change of status of employees under him were given particular weight by the defendant. This satisfies the requirement of paragraph C of the definition.

Paragraph D of the definition of "Executive" makes it mandatory that the court be satisfied that the plaintiff in his employment customarily and regularly exercised discretionary powers. The plaintiff worked in a narrow field. The policy of the company was that its plant be adequately protected against sabotage twenty-four hours a day. To afford this protection, guard posts were established as determined by the plaintiff. The location of posts, duties thereat, manner of performance of duty, composition of guard details and rotation of the reliefs were all as established and determined by the plaintiff. If men were reported unfit for duty by the sergeants, it was the plaintiff who decided on disciplinary or other action. If any emergency arose or any problem during the tour of duty of any shift or relief of the guards which the sergeant could not decide, it was referred to and handled by the plaintiff. If because of a temporary absence of guards the number of posts had to be curtailed the plaintiff determined what to do. He was authorized to select a supervisor to act for him in his absence. Although rules for the guards were made by the company it was the duty of the plaintiff to make decisions as to the seriousness of any violation of such rules. Plaintiff's contact with visitors, where faulty handling would affect public relations of the company, required the exercise by him of sound discretion. Plaintiff was responsible for results and for proper performance of duties by guards.

Incidentally, when the plaintiff determined whom to recommend for hiring, firing or promotion he also was engaged in exercising discretion. *Smith* v. *Porter*, supra. The court is of the opinion that the plaintiff customarily and regularly exercised discretionary powers as required by paragraph D of the definition.

The plaintiff was employed on a salary basis of "$45 a week flat" subsequently increased to $48 in May, 1942, and, beginning July 1, 1942, to $105 semimonthly. This is in excess of the minimum requirement of paragraph E of the definition.

The plaintiff claims that much of his work was of the same nature as that performed by nonexempt employees in the guard force. It is believed that plaintiff did, on occasion, perform

inspection and escort duties ordinarily performed by guards or sergeants. The court finds, however, that the defendant has proven by a fair preponderance of the evidence that the hours of work performed by the plaintiff of the same nature as that performed by the nonexempt employees did not exceed 20 per cent of the hours worked in the work week by nonexempt employees under his direction. In fact he spent considerably less time than this doing nonexempt work.

This meets the defendant's burden with reference to paragraph F of the definition.

It is found by the court that the defendant has established, by a fair preponderance of the evidence that the plaintiff was an "Executive" as defined by the administration, and thus is exempt from coverage under the act. This finding prevents recovery by the plaintiff herein.

There are two further issues to be considered.

The defendant has pleaded the Statutes of Limitations in defense of this action. It is claimed that under §6017 of the General Statutes the action is barred because not brought within one year. The cause of action set up by the complaint is not based upon a penal statute and therefore § 6017 does not apply. *Plumb* v. *Griffin,* 74 Conn. 132, 135; *Overnight Motor Co.* v. *Missel,* 316 U. S. 572, 583.

The defendant has also pleaded in defense the three-year Statute of Limitations, § 6010. This statute is believed to apply and would bar any cause of action alleged by the plaintiff arising before April 9, 1942.

The plaintiff's action has its basis in an oral contract of employment. The weight of authority appears to support defendant's contention that § 6010 applies to suits under the Fair Labor Standards Act brought in Connecticut courts. *Lorber* v. *Rosow,* 58 F. Sup. 341, 343; *Klotz* v. *Ippolito,* 40 F. Sup. 422, 426.

The plaintiff's claim that no statute of limitation applies, because there is no limitation in the Fair Labor Standards Act itself, is overruled on the basis of authorities cited above.

Judgment may enter in favor of the defendant.